## The H. O. Canfield Company v. United Construction Workers et al.

Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js.

Argued November 10—decided December 14, 1949.

*J. Kenneth Bradley,* with whom was *Dwight F. Fanton,* for the appellant (plaintiff).

*Daniel E. Brennan, Jr.,* with whom were *James J. A. Daly, John Arcudi* and, on the brief, *Norman Zolot,* for the appellees (defendants).

JENNINGS, J. The Superior Court dissolved a temporary injunction which restrained the defendants from interfering with access to the plaintiff's struck plant and refused a permanent one. Citations for contempt based on claimed violations of the temporary injunction were tried at the same time. It was stipulated that the evidence should be considered on both issues. The plaintiff appealed on the ground that a

corrected finding would show that it was entitled to judgment. It also assigned as error rulings on evidence and the conclusions reached.

We are in some doubt whether we should decide this appeal on its merits since the principal matters in dispute have apparently become moot. *McDonald* v. *Great Atlantic & Pacific Tea Co.*, 95 Conn. 160, 166, 111 A. 65; *State ex. rel. Foote* v. *Bartholomew*, 106 Conn. 698, 701, 138 A. 787; 1 C. J. S. 1016; 5 C. J. S. 36. From statements of counsel the situation today appears to be as follows: No picket line has been operating for some time although the strike is still technically in effect; the defendants propose to sue the plaintiff on various counts if they prevail on this appeal; if the plaintiff does not prevail, it may be liable on a $10,000 bond given on the issuance of the temporary injunction. The case took six weeks to try. We have decided to consider it.

"The plaintiff has indulged in one of those wholesale attacks on the finding which have been so frequently criticized by this court." *Staff* v. *Hawkins*, 135 Conn. 316, 318, 64 A. 2d 176. The situation is aggravated because of the length of the record, 716 pages. A fair sample of the ineffectiveness of these assignments, taken at random, is the finding that "On July 25 the plaintiff presented an affidavit to Superintendent Lyddy concerning the conduct of the picket line." It is alleged to have been found without evidence. The affidavit was attached to the original writ in the action.

The statement of facts found, necessary to a decision, can be drastically limited. The right to strike and the merits of the controversy between the union and the company are not in issue. The temporary injunction granted concerned only free access to the plaintiff's plant and offices. No recitation of the negotiations preceding or accompanying the strike is re-

quired. The following statement includes minor corrections to which the plaintiff is entitled. Most paragraphs of the draft finding either relate to irrelevant or cumulative matters or are based on conflicting evidence.

The plaintiff was a well-established Connecticut corporation in Bridgeport. In addition to a substantial number of production workers, it employed forty to fifty executives, engineers, research workers, laboratory workers, office workers and supervisors who were not members of any union. The named defendant was the sole collective bargaining agency for its members and had a contract with the plaintiff. The other defendants were officers and members of the national or local union. After some preliminary negotiations, the contract was terminated by the union as of July 24, 1947. On July 23 a union meeting was held to discuss the proposed work stoppage and picketing, and the members were urged to present themselves at the company's property on the morning of July 25 and to respect the picket line if one was established. Such a line was established at the gates to the plant, and there were forty or fifty people marching in close order in the picket line. The gates referred to furnish the only usual means of entering and leaving the plant. They are in a wire fence six feet high which separates the plaintiff's property from the sidewalk. There is a pedestrian gate about three feet wide, two feet of fence and then a vehicular gate about fourteen feet wide.

About 7 a. m., Captain Curry of the Bridgeport police advised the union's representatives that there must be a break·in the picket line. In accordance with his instructions, a space of about fifteen feet was opened. At this time 150 to 200 people, members of the union and others, were gathered across the street from the plaintiff's factory. About 8 a. m., Superintendent

Lyddy of the Bridgeport police had a conference with defendant Brock, national representative of the defendant union, concerning the possibility of certain employees' entering the plant. Brock advised Lyddy that people's tempers were running high and that if anyone tried then to enter the plant "there might be trouble and someone could get hurt." This was the only credible evidence introduced by the plaintiff as to possible violence on the picket line. At that time the pickets were orderly and conducted themselves as ordinary pickets. No threats were made by anyone on the picket line and no one made an effort to enter the plant. By early afternoon the group across the street had diminished to about fifty and the picket line was considerably reduced. After the temporary injunction was issued on August 6, the members of the union were repeatedly instructed to obey it in every detail.

On August 11 the plant was opened. Everyone had access to it but not more than thirteen production workers appeared. On August 15 the plant was closed for a month. When it reopened on September 15, between forty and fifty of its production employees who had been members of the union at the time of the work stoppage returned to work. At the time of trial not more than eighty-seven of such employees had returned. The plaintiff has employed more than 230 persons on production work who were not employees on July 25. Subsequent to July 25, the plaintiff's executive vice president, Charles O. Wyman, stated, in referring to his striking employees: "I'll never give in to them. They, the Union, will have to come to me on my own terms." Wyman does not appear as a witness.

The pickets have generally and substantially complied with all of the requirements of the temporary injunction in spite of the fact that employees of the

plaintiff have endeavored to create incidents that would provoke a violation. No one has been seriously delayed. The plaintiff, its customers, its employees and members of the general public have been able to enter and leave the plant freely.

During the strike a meeting was called for the purpose of organizing an independent union. Some of the members of the defendant union attended the meeting. As a result, an altercation arose. Three employees of the plaintiff were followed by members of the defendant union when they left the hall and two of them were assaulted and badly beaten.

The attack on the finding has been discussed. The plaintiff pursues six rulings on evidence in its brief. Four concerned testimony which the court held was not proper rebuttal. These rulings were within the discretion of the trial court. If the testimony had been admitted, there would have been surrebuttal and so on ad infinitum. The long case had to be terminated some time. A fifth ruling excluded testimony which the plaintiff offered for the purpose of proving violence at this same plant during a strike in the previous year. This ruling was correct. The evidence was irrelevant and, if admitted, would have resulted in a trial of the issues in the former strike.

During the course of the trial, the plaintiff offered evidence through Bridgeport's superintendent of police to show what would have happened had certain of the plaintiff's nonunion employees attempted to enter the plaintiff's plant while mass picketing was in progress. He was asked on direct examination: "Q. Now, you looked the situation over yourself? A. I did. Q. And based upon your thirty years' experience with the police force, did you come to any conclusion, or opinion, as to what would happen if these thirty people, or any others, tried to enter the plant?" The question

was excluded. It might well have been admitted; *MacLaren* v. *Bishop,* 113 Conn. 312, 314, 155 A. 210; but, as the trial court remarked, it hardly could have added anything to the statement of one of the strike leaders, in evidence, that he was afraid the temper of the strikers was such that there would be trouble. Undisputed findings are that this leader said "there might be trouble and someone could get hurt" and that the witness did not see the group that allegedly wanted to enter the plant. Furthermore, it is rare that a questionable ruling in a long trial is held so harmful as to constitute, of itself, reversible error. *State* v. *Kurz,* 131 Conn. 54, 65, 37 A. 2d 808. The exclusion of the question cannot have materially harmed the plaintiff. See Conn. App. Proc. § 13.

The question decisive of the case is whether the court abused its discretion in refusing to grant the permanent injunction requested. A general discussion of injunctions in labor disputes will be found in 1 Teller, Labor Disputes & Collective Bargaining, § 30; Oakes, Organized Labor & Industrial Conflicts, c. 32. In the exceptional case, the issuance of an injunction may be mandatory. *United States* v. *Stevens,* 103 Conn. 7, 18, 130 A. 249. Ordinarily it is discretionary. Id., 19; *Enfield Toll Bridge Co.* v. *Connecticut River Co.,* 7 Conn. 28, 50; *Point O'Woods Assn., Inc.* v. *Busher,* 117 Conn. 247, 250, 167 A. 546; see 2 High, Injunctions (4th Ed.) § 1696; Lewis & Spelling, Injunctions, p. 26; 43 C. J. S. 964, § 226. When the facts disclose a situation suitable for the exercise of discretion, the action of the trial court will not be reviewed in the absence of its abuse. *Reynolds* v. *Everett,* 144 N. Y. 189, 194, 39 N. E. 72; *Levy & Devaney, Inc.* v. *International Pocketbook Workers Union,* 114 Conn. 319, 324, 158 A. 795; *Cumberland Coal & Ry. Co.* v. *McDougall,* 44 N. S. 535, 545; Oakes, op. cit., §§ 576, 608. *Cardozo, C. J.,*

thus defined the respective spheres of the trial and appellate courts: "Not improbably a writ could have been framed whereby the desired end would have been attained by prohibitions less complete. We might have preferred such restraints if we had been exercising the powers of a chancellor. Sitting in this court we deal solely with defect of power or with abuse of discretion so gross as to be equivalent to defect of power." *Nann* v. *Raimist,* 255 N. Y. 307, 315, 174 N. E. 690.

The strike was called July 25. The writ was dated the same day. The temporary injunction was issued August 6. The ordinary rule is that the right to an injunction is to be determined as of the time of the hearing. *Loew's Enterprises, Inc.* v. *International Alliance of Theatrical Stage Employees,* 127 Conn. 415, 419, 17 A. 2d 525. In the case at bar this rule could not be applied fully because the defendants were restrained by the temporary injunction after August 6 and the trial did not take place until November. Their conduct from July 25 to August 6 must be the principal consideration, as the plaintiff substantially concedes in its brief. That conduct should also be judged as an indication of future conduct, since "An injunction is granted with reference to what there is reason to expect in its absence." *Levy & Devaney, Inc.* v. *International Pocketbook Workers Union,* supra.

There is nothing in the finding as to the defendants' conduct from July 25 to August 6 which places the case in that comparatively small class where refusal to issue an injunction is an abuse of discretion. *Kinloch Telephone Co.* v. *Local Union No. 2,* 275 F. 241, was such a case. There is no comparison between the statement of facts in that case and the case at bar. For example, on page 246 of the *Kinloch* case it is found

that "From the time that the strike was called there commenced on the part of appellees and other members of Local Union No. 2 a policy of threats, intimidation, persuasion, and violence, which disrupted the mechanical organization of appellants . . . and resulted in . . . a threatened loss of hundreds of thousands of dollars if the matter continued as it was at that time." Then follows an account of a number of instances of physical assault and intimidation.

After two or three days' trial, *Roberts, J.,* concluded that "the defendants have exceeded their right to a lawful picket" and that they should be enjoined. In a trial lasting six weeks in the following November and December, *Wynne, J.,* concluded that there was no occasion at that time to make the temporary injunction permanent and he dissolved it. It is undisputed that feeling ran high when the strike was first called and that for the first two hours there was danger that an attempt to enter the plant would have been opposed with violence. The finding that the situation was soon brought under control is attacked. The evidence on this point was extensive and contradictory. Most of it was offered through partisan witnesses, but that of the officers and sergeants of police was clear and convincing and furnished ample support for the finding. Technical violations of the temporary injunction occurred, but there was no serious interference by the pickets with ingress into and egress from the plant. The single instance of violent physical assault was serious, but, isolated as it was, it did not require a judgment for the plaintiff as a matter of law. *Steiner* v. *Long Beach Local No. 128,* 19 Cal. 2d 676, 684, 123 P. 2d 20; *Scofes* v. *Helmar,* 205 Ind. 596, 606, 187 N. E. 662; cf. *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.,* 312 U. S. 287, 295, 61 S. Ct. 552, 85 L.

Ed. 836, 132 A. L. R. 1200, where such incidents are referred to as episodic and isolated.

The trial court well summarized the finding as to violations of the temporary injunction. "Regarding claims of various and sundry contempts of court, it is abundantly clear that the parties were held in admirable restraint considering the feelings that were rampant. Nothing shown to have been done comes within any fair definition of a contempt."

The plaintiff refers to a statement in the memorandum of decision of the trial court to the effect that in such a labor dispute as this it is in the last analysis only the public interest which justifies injunctive relief. It is, of course, true that the immediate basis of relief in such cases is the unlawful interference with the right of the plaintiff to carry on its business. If the statement in the memorandum of decision is to be taken as in derogation of that principle, it is sufficient to point out that it is in no way reflected in the conclusions which the trial court reached, as stated in the finding; and it is by these that we must test the correctness of the decision. *Metropolitan Life Ins. Co.* v. *Bassford,* 120 Conn. 384, 388, 180 A. 692.

The factual situation does not require consideration of the application of General Statutes, §§ 7409, 7413, defining the jurisdiction of the courts to issue injunctions in labor disputes. The trial court did not abuse its discretion in denying a permanent injunction and rendering judgment for the defendants.

There is no error.

In this opinion the other judges concurred.