STATE OF CONNECTICUT *v.* EDGAR T. PENN

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Submitted on briefs November 8—decided December 11, 1956

*Israel J. Jacobs, Howard A. Jacobs* and *Stanley A. Jacobs,* on the brief for the appellant (defendant).

*Abraham S. Ullman,* state's attorney, and *Arthur T. Gorman,* assistant state's attorney, on the brief for the appellee (state).

INGLIS, C. J. The defendant has appealed from a conviction of assault with intent to murder, claiming errors in the charge to the jury and in rulings on evidence.

On the trial of the case to the jury, the state claimed to have proved the following facts: On June 23, 1954, the defendant's wife, Leola, obtained a divorce from him. The complaining witness in the present case, Lafayette Myrick, had formerly been a friend of both the defendant and his wife but had had no contact with them since 1943. On July 31, 1954, Myrick arrived in New Haven and called at the house where Mrs. Penn lived with her two children, her mother and her sister, Jeanette Chambers. While he was there, Mrs. Penn sold him a ticket to a picnic to be held that evening in Woodbridge, with the understanding that he might accompany her, her son and daughter, her sister and two other people. Shortly after the arrival of this group at the picnic, the defendant accosted his former wife, physically mistreated her and took issue with her over the presence of Myrick. To avoid trouble, Mrs. Penn, Myrick and the rest of her group, with the exception of her children, left the picnic and went to the Elks Club in Waterbury. They spent the rest of the evening there and returned to Mrs. Penn's home at about 2 a.m. on August 1. In the meantime, at about midnight, the defendant left the picnic and went to

his own home in New Haven. While there, he became greatly agitated by his hatred for Myrick. He made up his mind to take one of his shotguns and go looking for his former wife and Myrick. This he did, after he had had a stiff drink of whiskey. Using his father's automobile, he drove around for nearly an hour in the neighborhood in which Mrs. Penn lived. During this time he loaded his gun. When the car in which Mrs. Penn was riding stopped at her home, Myrick was in the driver's seat. As all the passengers in the car were alighting, the defendant drove his car up so that his right front window was exactly opposite the left front window of the other car. Both windows were open. The defendant rested his shotgun on the right front door of his car and discharged it, seriously wounding Myrick in the left shoulder. The defendant then drove away. After about half an hour, he surrendered to the police and admitted shooting Myrick because of his hatred. He was not intoxicated at any time while he was driving his father's car. The shooting of Myrick was with deliberation and malice aforethought and with intent to murder.

The defendant offered evidence to prove and claimed to have proved the following: He was in love with his wife both before and after the divorce and remained in love with her down to the date of the shooting. He still had hope that there would be a reconciliation. He had known Myrick since 1939, and the latter had roomed with him and his wife for a few months. At one time the defendant had come into possession of a letter from Myrick to Mrs. Penn. In the early afternoon of July 31, 1954, the defendant invited Mrs. Penn to go to the picnic. She refused. He then purchased a fifth of gin and went to the scene of the picnic. During the afternoon and

early evening he consumed the greater portion of the gin and became very intoxicated. When he saw his former wife and Myrick at the picnic he became highly incensed and emotionally upset. He felt that his hopes for a reconciliation were destroyed. At about midnight he left the picnic and went home. When he arrived there, he was still intoxicated and greatly upset. He took a large drink of whiskey and then, after loading his shotgun and taking along some shells, drove off in his father's automobile to the neighborhood where Mrs. Penn lived. At a place near her residence, he saw his two children on the street and accosted them. They, however, walked away. The defendant then drove around for about fifteen minutes. Finally, he came upon the car in which Mrs. Penn had been riding. It was parked in front of her home. He saw Myrick in the front seat and Mrs. Penn seated beside him with her head on his shoulder. Thereupon the defendant, who was still intoxicated, temporarily lost control of himself. He shot Myrick. At the time, his state of mind was such that he was incapable of a deliberate, wilful and premeditated attack. He was then incapable of harboring malice aforethought. He is a person of peaceable character.

The first assignment of error directed at the charge is that the court failed to comply with the defendant's request to charge couched in the following language: "You must consider the intoxication of the accused at the time he pulled the trigger, if you find it to be a fact, in connection with the evidence in the case, in determining whether or not at the time he pulled the trigger, the accused had formed a specific intent to kill." In the charge as given, the court made it plain that if the defendant were to be found guilty of the charge of assault with intent to

murder or the lesser offense of assault with intent to kill, it was essential for the state to have proved, among other things, that at the time of killing he had not only a general criminal intent but also a specific intent to kill. The evidence bearing on the question of specific intent was then reviewed. Included in that review was the evidence bearing on the defendant's claimed intoxication. It was made clear that his intoxication, if in fact it existed, was relevant to the question whether he was able to have, and did have, a specific intent to kill. Thus the request to charge was reasonably complied with.

The next criticism of the charge is directed at the instruction with reference to the claim of the defendant that he had a good reputation in the community. The court charged at some length on this subject and ended by saying: "It must be a general reputation representing the consensus of the common feeling of his fellows as to him." The defendant's criticism of this charge is based upon the rule that evidence, in a case such as this, that the accused is possessed of a mild and peaceable character is admissible as tending to disprove that he intentionally engaged in acts of violence, and that such evidence is of the fact of the trait of character and not of a general reputation in the community. *Richmond* v. *Norwich,* 96 Conn. 582, 596, 115 A. 11. In this criticism, however, the defendant overlooks the distinction between evidence of character traits and evidence of reputation. As regards evidence of reputation, the charge was correct. *State* v. *Alderman,* 83 Conn. 597, 602, 78 A. 331. While the defendant had offered evidence of his peacable character, he had not requested any specific charge on this phase of the evidence. Under the circumstances, it was not error to omit reference to it from the charge.

The defendant further claims that the court erred in omitting to charge that a criminal intent is an essential element of the crime of aggravated assault or of simple assault. By finding the defendant guilty as charged, the jury found that he had the specific intent to kill with malice aforethought. Since the greater includes the lesser, such a finding imputes the finding of a general criminal intent, which is nothing more than a knowledge that the act done is evil or immoral. *State* v. *Hayes,* 127 Conn. 543, 585, 18 A.2d 895. Accordingly, the claimed error of omission from the charge was, if error at all, harmless.

A member of the New Haven detective bureau, called by the state, testified that after the shooting he interviewed Myrick in the hospital in the presence of the defendant. On cross-examination he said that he gave the defendant an opportunity to ask questions of Myrick and that the defendant asked no questions but made accusations against Myrick. The defendant's counsel asked several questions which he claimed were for the purpose of testing the memory of the witness but which, in reality, were designed to elicit from the witness testimony as to self-serving declarations made by the defendant at the interview. The court's exclusion of these questions was well within its power to limit cross-examination to reasonable length.

After the defendant had testified that he had patched up his quarrel with his former wife at an interview with her on July 29, 1954, he denied on cross-examination that she had called the police on that occasion. Thereafter, a policeman was called by the state and testified, over objection, that in response to a call from Mrs. Penn on July 29, he went to the laundry operated by her and she then told him,

in the presence of the defendant, that she was fearful that the defendant might do her bodily harm because he had threatened her. The defendant's objection on the ground that this testimony was with respect to a collateral matter was not well taken. The evidence was relevant in that it rebutted the claim of the defendant that he and his wife had become reconciled before the shooting.

Finally, the defendant complains of various rulings excluding evidence offered by him with reference to relations between him and his wife, and between her and Myrick in 1939 and 1940. The only bearing that this evidence could have had on the case was on the question whether the defendant was upset and beside himself at the time of the shooting. The court excluded the evidence on the ground that it was too remote to be relevant. These rulings were within the discretion of the court. *Hamilton* v. *Smith,* 74 Conn. 374, 380, 50 A. 884.

There is no error.

In this opinion the other judges concurred.