DONALD R. HIRSCH v. FRANCIS J. BRACELAND

O'SULLIVAN, C. J., WYNNE, DALY, KING and DEVLIN, Js.

Argued June 5—decided July 2, 1957

*Morton E. Cole,* with whom, on the brief, was *Cyril Cole,* for the appellant (plaintiff).

*Lee C. Fielden,* with whom were *John M. Donahue* and, on the brief, *Bruce W. Manternach,* for the appellee (defendant).

O'Sullivan, C. J. Upon the application of the plaintiff, acting on behalf of Barbara R. Wood, the Superior Court issued a writ of habeas corpus on March 8, 1957, directed against the defendant in his capacity as superintendent of the Institute of Living in Hartford. In his return, the defendant admitted that Mrs. Wood was being held by him at the Institute, but he denied that her confinement was illegal, since she was being held, he alleged, under a certificate left with him in conformity with § 1492d of the 1955 Cumulative Supplement and since proceedings in the Probate Court for the district of Hartford for Mrs. Wood's commitment had

been commenced on February 20, 1957, although they had not been completed when the return was filed on March 20, 1957. The defendant further alleged that Mrs. Wood continued to be mentally ill. The plaintiff's answer denied the affirmative allegations of the return and then went on to state that the certificate mentioned in the return was void for various listed reasons. The court found the issues for the defendant and dismissed the writ. The plaintiff then appealed to this court.

The finding, which cannot be corrected so as to benefit the plaintiff, recites the following facts: Barbara R. Wood, aged 51, is domiciled in Nantucket, Massachusetts, where she and her husband, Dr. Benjamin S. Wood, a retired obstetrician, had lived for a long time prior to January 26, 1957. In the latter part of December, 1956, she suffered an attack of the emotional illness to which she had been subject for many years. During the course of this attack, she was examined by Dr. John Murray, a Boston psychiatrist, and thereafter she reluctantly agreed to enter the Institute, a hospital providing care and treatment for the mentally ill. However, by the time Dr. Wood had arranged for accommodations for his wife, she had changed her mind about going there. On January 21, 1957, Dr. Wood telephoned to Dr. John Donnelly, the medical director of the Institute, and informed him of Mrs. Wood's refusal to accept treatment willingly. Dr. Wood further said over the telephone that he wanted his wife to enter the Institute voluntarily, if that was at all possible, and that Dr. Murray was about to make another attempt to persuade her to leave for Hartford on January 26, 1957.

On the morning of that date, Dr. Wood again telephoned to the Institute to say that Mrs. Wood

and he were about to fly from Nantucket, that she would be under sedation and that arrangements to take her by automobile from the plane to the Institute would have to be made. As Dr. Wood related, Mrs. Wood, while under sedation and while accompanied by him and Dr. Murray, was taken that afternoon by air to Brainard Field, Hartford. At the insistence of the pilot, handcuffs were placed on her before the take-off and were removed when the plane landed. At the beginning of the trip, her consciousness was clouded, but this condition disappeared during the progress of the flight. Upon the arrival of the plane at Hartford, Mrs. Wood, her husband and Dr. Murray were taken by automobile to the grounds of the Institute. There she both refused to leave the car and tried to strike those near her. Dr. James M. Trench, a licensed and qualified psychiatrist practicing in Hartford and having no connection with the Institute, was then called to examine her. He did so and found her to be suffering from mental illness and to be a source of danger to herself and to others. Thereupon, Dr. Trench executed and delivered to the Institute a certificate stating the facts required for emergency detention. Against her will Mrs. Wood was then taken into the Institute, where she has since remained. She did not request, nor was she refused, the right to be examined by a physician of her own choice.

The General Assembly has provided a method for detaining a mentally ill person without an order of court. Cum. Sup. 1955, § 1492d. The validity of any detention effected under that statute, the pertinent part of which is quoted in the footnote[1], is

---

[1] "Sec. 1492d. DETENTION PRIOR TO COMMITMENT. Any person who has suddenly become in need of care and treatment in a hospital for mental illness may be confined in such a hospital, either public

circumscribed in time and conditioned upon the proper execution of a certificate by a physician licensed to practice medicine or surgery in Connecticut. It was pursuant to the execution and delivery of the certificate by Dr. Trench that the Institute accepted and held Mrs. Wood in temporary restraint. It is this certificate that the plaintiff asserts was void. This is the basic and vital claim upon which his grievance against the Institute rests.

One unchallenged fact in the finding, not mentioned in the above recital, is that Dr. Wood instituted proceedings to commit his wife by filing an application in the Probate Court for the district of Hartford on February 20, 1957. These proceedings had not been completed either at the end of thirty days from the detention on January 26, 1957, or on

---

or private, for not more than thirty days without order of any court, provided, when proceedings in a probate court for commitment have been instituted but not completed at the end of such thirty days, such confinement may be continued without order until the completion of the probate court proceedings, and provided the superintendent of such hospital shall immediately discharge any patient found not to be mentally ill, or any person recovered from mental illness. At the time of delivery of such person to such hospital, there shall be left, in the hands of the person in charge thereof, a certificate, signed by a physician licensed to practice medicine or surgery in Connecticut and dated not more than three days prior to its delivery into the hands of the person in charge of the hospital. Such certificate shall state the date of personal examination of the person to be confined, which shall be not more than three days prior to the date of signature of the certificate, shall state the findings of the physician relative to the physical and mental condition of the person and the history of the case, if known, and shall state that it is the opinion of the physician that the person examined by him is in need of immediate care in a hospital for mental illness. Prior to hospitalization under the provisions of this section any person shall have the right to be examined by a physician of his own choosing, and if such physician concludes from his examination that such person is not mentally ill, such person shall not be admitted to or detained in a hospital for mental illness under the provisions of this section. . . ."

March 21, 1957, the date of the hearing under the writ of habeas corpus. Another fact, not appearing in the record, but mentioned in the defendant's brief and admitted to be so by the plaintiff during the course of oral argument in this court, is that, since the date of judgment in the case at bar, the Probate Court has acted on Dr. Wood's application by committing Mrs. Wood to the Institute, and that she has appealed from the order to the Superior Court in Hartford County. In view of this concession, fortified, as it is, by the judicial notice we take of the files of the Superior Court, the legality of Dr. Trench's certificate and of Mrs. Wood's detention thereunder by the Institute becomes moot, since she is no longer restrained under that certificate. She is now held under the authority of an order of the Probate Court. That an appeal has been taken from that order is of no moment, since the order is neither vacated nor suspended by the appeal. *White* v. *Strong,* 75 Conn. 308, 312, 53 A. 654. It remains in force until modified or reversed by the Superior Court. *Silverstone* v. *Lillie,* 141 Conn. 104, 107, 103 A.2d 915; 1 Locke & Kohn, Conn. Probate Practice, § 205. Since the questions presented to us by the plaintiff have been rendered academic by the act of the Probate Court, we refuse to entertain the appeal. *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22; Maltbie, Conn. App. Proc. (2d Ed.) p. 26, §§ 21, 339; see *H. O. Canfield Co.* v. *United Construction Workers,* 136 Conn. 293, 295, 70 A.2d 547.

The appeal is dismissed.

In this opinion WYNNE, DALY and KING, Js., concurred; DEVLIN, J., dissented.