Marguerite E. Mills et al. *v.* Town Plan and Zoning Commission of the Town of Windsor

O'Sullivan, C. J., Baldwin, Wynne, Daly and King, Js.

Argued June 6—decided July 16, 1957

*Merriam Davis* and *Douglass B. Wright*, with whom was *Roger Wolcott Davis*, for the appellants (plaintiffs).

*Frank J. Monchun*, with whom was *Harry Cooper*, for the appellee (defendant).

DALY, J. On April 22, 1955, the named plaintiff was the owner of a seventeen-acre tract of land in the Highlands-Deerfield area of the town of Windsor. On that date she filed an application with the defendant commission to change the zone of her land, hereinafter called the Mills tract, from residence to business. The other plaintiffs, interested property owners in Windsor, espoused the granting of the application. On February 2, 1956, the commission denied the application as well as a request for a change of the comprehensive plan of development. The plaintiffs appealed to the Court of Common Pleas. The case was referred to a state referee. General Statutes, Cum. Sup. 1955, § 379d. In their appeal the plaintiffs alleged that the commission had acted unreasonably, illogically, arbitrarily and illegally; that its action did not promote the general welfare of the community and was not in conformity with the stated purposes of the zoning law; that the commission was influenced by circumstances which should not have been considered, as a result of which it was biased and its decision was arbitrary and illegal; and that one or more members of the commission were activated by extraneous considerations and therefore the decision was invalid and

illegal. The referee concluded that the appeal should be dismissed. The plaintiffs excepted to the amended report and its acceptance. The court accepted the report as amended and rendered judgment dismissing the appeal. The plaintiffs have now appealed to this court.

The referee found the following facts: A twenty-five-acre tract of land at the intersection of Park Avenue and the Hartford-Springfield expressway in Windsor, about two miles northwest of the Mills property, was shown as unzoned on the comprehensive plan. It is referred to as the Park Avenue site. On March 29, 1956, an application to zone it for business was filed with the commission. The Park Regional Corporation was interested in this site for a regional shopping center. Forty per cent of the stock in that corporation was owned by William Hastings. Royal Thompson and Burton C. Gustafson had been appointed to the commission in the fall of 1955 at the suggestion of the chairman of the town committee of one of the major political parties, who was the owner of another 40 per cent of the stock in the corporation. While the application to rezone the Mills tract was pending, Thompson acted as a dummy for Hastings in purchasing another piece of land, consisting of ten acres, which was proposed for industrial use. In doing so, Thompson knew that the zoning of that land would have to be changed from residence to industrial in order to sell it to a prospective purchaser. At the meeting of the commission at which it considered and acted upon the application for the change of zone of the ten-acre tract, Thompson sat with the other members. Although he did not vote, he declined to disqualify himself when other members suggested that he might wish to do so. Thompson was associated

with Hastings in other real estate dealings. At the executive session of the commission at which the application to rezone the Mills tract was discussed, Thompson made observations, gave reasons why the application should be denied, and seconded the motion to adopt the resolution denying it. Gustafson was the only other member of the commission who commented on the application.

Prior to the hearing on the Mills application, on January 11, 1956, the commission had shown a preference for the Park Avenue site for a business center. John J. Mooney, Jr., a member of the commission, had stated that the commission was considering the Park Avenue site for the location of a business center and that, although no formal request for a change of the zone in which it was located had been received, the commission had drawn up some recommendations regarding it. He described the site in detail and said that the commission was prepared to advise the town that a project on such a scale as was contemplated should be welcomed; that tax revenue was one of the advantages; that the commission would ensure certain safeguards for the surrounding residential territory; that Windsor businessmen would "receive priority when the [s]tores are offered for rent"; that a "regional shopping center comparable to Bishop's Corner was favored" by the commission; and that the "25-acre Park Avenue-Expressway site meets that test."

Joseph R. Moschner had been the consultant to the commission since July 1, 1954. While the Mills application was pending, he was, with the knowledge and acquiescence of the commission, employed by The Park Regional Corporation to make plans and site developments for a shopping center at the Park Avenue site. He was not employed full time by the

commission and was available for employment by others. Before the hearing on the Mills application, Moschner prepared an analysis of that application which was generally unfavorable to the applicant. The analysis was not brought down to date before the denial of the application, although many of the questions raised in the analysis had been answered prior to, or at, the hearing before the commission. Nor was the analysis made available to the named plaintiff prior to the hearing and decision on the application. After the denial of the application, counsel for the plaintiffs learned of the existence of the analysis. His request to see it was refused. He saw it only after it had been subpoenaed at the time of the hearing held by the referee. Moschner's conclusion, as stated in the analysis, indicated that the application should be granted if certain requirements were met. These requirements were substantially complied with. The commission relied in large measure on Moschner's advice but chose not to follow his final recommendation that the application be granted. Daniel E. Rothenberg, a representative of the company which was interested in developing the Mills tract, talked with Richard Young, the town planner, before the hearing of the commission on the application. Young asked Rothenberg if he could reduce the size of the shopping center proposed for the tract, because the members of the commission were disturbed by the fact that it might injure the shopping center contemplated for the Park Avenue site. Mooney, who was the chairman of the commission, admitted that the commission had discussed the matter with Young.

In his report, the referee stated that both Mooney and Thompson should have disqualified themselves; that suspicion naturally came into being because of

Mooney's publicized comments on the Park Avenue site and Thompson's dealings with Hastings; and that, as members of the zoning commission, Mooney and Thompson could not be too careful to avoid any suspicion that they might be interested in the Park Avenue site, "certainly on the part of Thompson because of Mr. Hastings' 40 [per cent] ownership of it and also because of where the other 40 [per cent] ownership was, as disclosed at the hearing."

Section 382d of the 1955 Cumulative Supplement to the General Statutes provides in part: "No member of any planning or zoning commission . . . shall participate in the hearing or decision of the . . . commission . . . upon any matter in which he is directly or indirectly interested in a personal or financial sense. In the event of such disqualification, such fact shall be entered on the records of the commission . . . and the remaining members of the commission . . . shall choose an elector to act as a member of such commission . . . in the hearing and determination of the particular matter or matters in which the disqualification arose."

Public office is a trust conferred by public authority for a public purpose. The status of each member of the commission forbids him from placing himself in a position where private interests conflict with his public duty. It is the policy of the law to keep the official so far from temptation as to ensure his unselfish devotion to the public interest. He must not be permitted to let personal interests conflict with his public duty. The question becomes primarily one of public policy. The modification of zoning regulations partakes of the nature of a legislative proceeding; nevertheless, it is not legislative in the broad sense; on the contrary, the power emanates from a specific grant and the manner of

its exercise is limited. The mode of exercising the power thus expressly granted must be reasonable. The exercise of power of that nature, whether it be denominated legislative or quasi-judicial, should command the highest public confidence, since zoning restrictions limit a person's free use of his real estate in the interest of the general public good. Anything which tends to weaken public confidence and to undermine the sense of security of individual rights which a citizen is entitled to feel is against public policy. The persuasiveness of the arguments made by Mooney and Thompson in influencing their associates is unknown and need not be known. *Low* v. *Madison,* 135 Conn. 1, 8, 60 A.2d 774; Maltbie, "The Legal Background of Zoning," 22 Conn. B.J., pp. 2, 6, 9. Public policy cannot tolerate these proceedings. The record before us presents, not a possibility of disqualification, but its actuality. The action of the defendant commission was invalid. Since our conclusion upon this question is decisive of the appeal, it is unnecessary to discuss any other claim made by the plaintiffs.

There is error, the judgment is set aside and the case is remanded for the rendition of a judgment returning it to the defendant commission to be proceeded with according to law.

In this opinion the other judges concurred.