## DANA-ROBIN CORPORATION *v.* COMMON COUNCIL OF THE CITY OF DANBURY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 7, 1973—decision released March 26, 1974

*W. Bradley Morehouse,* with whom, on the brief, were *A. Reynolds Gordon* and *Arthur A. Hiller,* for the appellant (plaintiff).

*Robert N. Talarico,* for the appellees (defendants).

MacDonald, J. The plaintiff, Dana-Robin Corporation, appealed to the Court of Common Pleas from the action of the defendant common council of the city of Danbury in denying its petitions for zone changes and design approval. From the judgment dismissing the appeal, and after our grant of certification, the plaintiff has appealed to this court. The plaintiff's assignments of error, consisting primarily of challenges to the finding and conclusions of the court and its overruling of the plaintiff's claims of law, are directed for the most part at claimed procedural irregularities at both the planning commission and common council levels. The plaintiff maintains that an adverse report of the planning commission on its proposed apartment complex was improper and illegal due to the participation therein of members who should have been disqualified because of conflict of interest, dual office holding, and the unlawful participation of a new member. It further maintains that the actions of the common council in refusing to replace two members who had disqualified themselves and in allowing the mayor of the city to moderate a meeting of the council tainted its decision to such an extent as to render it invalid.

The record and the finding, which is not subject to material correction,[1] reveal the following general facts: In 1970, the plaintiff owned a fifty-five-acre tract of land zoned for single-family residences and located "approximately two to four miles" from the Western Connecticut State College campus in Danbury, Connecticut. After preliminary discussions with Danbury officials and the planning commission, the plaintiff developed a plan for the construction of a 963-unit housing project on this land, consisting of four ten-story towers and terrace apartments, together with recreational and commercial facilities. The development, to be called St. George Terrace, was designed to appeal to relatively high and middle income residents, rather than to college students.

On April 1, 1970, the plaintiff submitted three petitions to the common council, which also serves as the Danbury zoning commission. General Stat-

---

[1] Error was assigned, inter alia, in the court's refusal to find as admitted or undisputed the material facts set forth in sixteen paragraphs of the draft finding, to its finding without evidence the facts stated in ten paragraphs of the finding and in finding as facts eight paragraphs of the finding when they involved conclusions rather than facts. Many of these claims are not briefed and are thereby treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; Maltbie, Conn. App. Proc. § 327. Several, while not mentioned in the body of the brief, are addressed by the evidence printed in the appendix. While we do not condone this practice, we have reviewed the claims seemingly encompassed therein.

The requested additions to the finding are either not admitted or undisputed, implicit in the finding, or immaterial, or they would not directly affect the ultimate facts upon which the judgment depends, so that no additions are warranted. *Salvatore* v. *Milicki,* 163 Conn. 275, 303 A.2d 734. An analysis of the attacks on the finding of the court indicates that they amount to an attempt either to have this court accept the plaintiff's version of the facts or to have this court retry the case and displace .the trial court as the finder of facts, which, as we have repeatedly stated, we will not do. *Salvatore* v. *Milicki,* supra, 278; *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 611, 236 A.2d. 466.

utes § 8-1. The first sought an amendment to the zoning regulations to establish a new residential classification designated PA-40, which would permit high-density multiple housing. The second sought to have fifty of the fifty-five acres zoned PA-40 and the remaining five acres zoned commercial. The third petition requested specific approval to erect St. George Terrace on the plaintiff's property.

As required by General Statutes § 8-3a, the common council referred the petitions to the planning commission for an advisory report. On June 17, 1970, the planning commission voted to disapprove the petitions. Upon disapproval of a zoning proposal by the planning commission, a two-thirds vote of all the members of the common council is required to adopt the proposal. General Statutes § 8-3a; *Hahn* v. *Zoning Commission,* 162 Conn. 210, 293 A.2d 9. Absent a planning commission disapproval, a simple majority vote would be sufficient for adoption. After the planning commission's action, the common council appointed a five-man committee to hold a public hearing on the petitions as permitted by General Statutes § 8-3. This hearing was held on July 13, 1970, and the committee voted four to one for approval. On September 1, 1970, the common council met to act on the petitions. Of the twenty-one members of the council, twenty were present but two disqualified themselves, and the vote was ten to eight in favor of the petitions. The moderator ruled that because two-thirds of the council's membership failed to vote in favor of the proposals, they had not been approved. On appeal to the Court of Common Pleas, the council's action was sustained.

The plaintiff first contends that the vote of disapproval by the planning commission was invalid

because two of its members should have disqualified themselves because of a conflict of interest, as required by General Statutes § 8-21; that because of the invalidity of the planning commission's adverse report, only a simple majority vote of the common council was required for approval of the three petitions; and that since a majority vote was obtained by the plaintiff at the meeting on September 1, 1970, the petitions were actually approved.

One of the challenged members of the planning commission, Vincent DeFlumeri, and his mother and sister were the sole stockholders of two real estate corporations which owned and rented residential properties in Danbury. One of those corporations, Ridge Realty Corporation, owned Beaver Brook Hall, an off-campus dormitory for students who could not obtain rooms on campus. Beaver Brook Hall was located about seven-tenths of a mile from the campus. It contained forty rooms and could house eighty-one students. In 1970, however, Beaver Brook Hall was not fully occupied.

The court found that only a few of the students at Western Connecticut State College have automobiles and that only alternative housing located near the campus would make it difficult to keep Beaver Brook Hall fully occupied. As previously noted, the plaintiff's property was found to be two to four miles away from the campus, and the project was found to be designed to appeal to relatively high and middle income residents and not to college students. The court also found that neither the plaintiff nor its expert witnesses ever indicated to either the planning commission or the common council that St. George Terrace would be occupied by or was planned for use by students. While some of these findings were challenged, the evidence

printed in the defendants' appendix adequately supports them. The court concluded that DeFlumeri's financial interest in Beaver Brook Hall "did not disqualify him from sitting as a member of the Planning Commission since . . . [his] interests were too remote or speculative financially . . . [and not] such as to create a personal bias or prejudice."

General Statutes § 8-21 provides, in relevant part: "No member of any planning commission shall participate in the hearing or decision of the commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." "An 'interest' has been defined as having a share or concern in some project or affair, as being involved, as liable to be affected or prejudiced, as having self-interest, and as being the opposite of disinterest." *Housing Authority* v. *Dorsey,* 164 Conn. 247, 252, 320 A.2d 820.

Public office is a trust conferred by public authority for a public purpose. The status of each member of the planning commission forbids him from placing himself in a position where private interests might conflict with his public duty. It is the policy of the law to keep the official so far from temptation as to ensure his unselfish devotion to the public interest. The question becomes one of public policy. The modification of zoning regulations must command the highest public confidence, since, for the public good, zoning restrictions limit a person's free use of his real estate. We repeatedly have held that anything which tends to weaken public confidence is against public policy. *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 498, 234 A.2d 838; *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 499–500, 191 A.2d 250; *Mills* v. *Town*

*Plan & Zoning Commission,* 144 Conn. 493, 498, 499, 134 A.2d 250; *Low* v. *Madison,* 135 Conn. 1, 8, 60 A.2d 774. The test is not whether personal interest does conflict, but whether it reasonably might conflict. *Josephson* v. *Planning Board,* 151 Conn. 489, 493–95, 199 A.2d 690. If a zoning authority member fails to disqualify himself despite a conflict of interest, the action of the authority in which he participates is invalid. *Kovalik* v. *Planning & Zoning Commission,* supra, 499.

We also have pointed out, however, that "[t]he decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." *Anderson* v. *Zoning Commission,* 157 Conn. 285, 291, 253 A.2d 16. In subjecting those circumstances to careful scrutiny, courts must exercise a degree of caution. "Local governments would . . . be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official." *Anderson* v. *Zoning Commission,* supra. Here, the trial court heard the evidence presented and made the "factual" conclusion that DeFlumeri's interest was too "speculative" to require a disqualification. Since the findings relevant to that determination are supported by the evidence and in themselves amply support this conclusion, we see no reason to interfere with it.

The plaintiff also assigned error in the court's refusal to admit a housing preference survey taken of forty-four Beaver Brook Hall residents, comparing Beaver Brook Hall with the proposed St. George Terrace. The survey was carried out by a resident of Beaver Brook Hall who was a freshman student at Western Connecticut State College. The

survey was offered on the issue of possible competition between Beaver Brook Hall and St. George Terrace. While the survey "appears relevant for the purpose for which it was offered, inquiry on these lines must of necessity be subject to logical limitation and it rests in the sound discretion of the trial court to determine when matter, although probative, by reason of remoteness, cumulative nature, or other cause so lacks significance or materiality as to justify its exclusion. *Rosenstein* v. *Fair Haven & W. R. Co.*, 78 Conn. 29, 34, 60 Atl. 1061." *Bjorkman* v. *Newington*, 113 Conn. 181, 187, 154 A. 346; *State* v. *Penn*, 144 Conn. 148, 155, 127 A.2d 833. The court heard a considerable amount of evidence concerning the possibility of competition between the two apartments, including testimony of the plaintiff's own expert witness, John F. Rowlson. The evidence contained in the survey, in effect, would only have restated Rowlson's testimony. Under these circumstances we are unable to say that the exclusion of such a nonprofessional survey constituted reversible error. *H. O. Canfield Co.* v. *United Construction Workers*, 136 Conn. 293, 299, 70 A.2d 547; *Bjorkman* v. *Newington*, supra, 187.

The other member of the planning commission whose participation the plaintiff challenges, George Valluzzo, owned a six-unit apartment house in Danbury. His wife owned two one-family rental homes as trustee for his son and daughter, respectively. His brothers also owned a few residential rental properties in Danbury. The court concluded that the Valluzzo family interests were too remote or speculative to disqualify him. To do otherwise, in our opinion, would have been to conclude that, as a matter of law, any interest in rental property must

operate to disqualify a zoning official from consideration of matters concerning proposed rental property development. "If this were so, it would not only discourage but might even prevent capable men and women from serving as members of the various zoning authorities. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism. They must, however, also be mindful that to abrogate a municipal action on the basis that some remote and nebulous interest may be present would be to deprive unjustifiably a municipality, in many important instances, of the services of its duly elected or appointed officials." *Anderson* v. *Zoning Commission,* supra. No expert testimony was introduced to the effect that the holdings of Valluzzo conflicted with the interests of the plaintiff, nor does the record indicate that any of the Valluzzo property was in close proximity to the proposed complex. We have no basis, therefore, to interfere with the court's conclusion.

The plaintiff next argues that the participation of Emanuel A. Merullo in the decision of the planning commission was unlawful. Merullo was appointed to the planning commission on April 7, 1970, and voted on the applications of the plaintiff at the April 15, 1970, meeting, although he had not attended the public hearing held by the planning commission on March 4, 1970. It is apparently the position of the plaintiff that Merullo should have been disqualified in that he did not attend the hearing or sufficiently familiarize himself with the issues presented by the plaintiff's applications. "This court has held that, even where hearings are required by statute, a commission member need not be present in order to participate in decisions '[i]f

that member acquaints himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to exercise an informed judgment.' *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 42, 282 A.2d 894." *New Haven* v. *Public Utilities Commission,* 165 Conn. 687, 724, 345 A.2d 563. In this regard the court found that condensed versions of what had transpired before the planning commission were available for Merullo. Furthermore, the final determinative vote of the planning commission, and the one forwarded to the zoning commission, did not occur until June 17, 1970, over two months after Merullo's appointment. The court concluded that Merullo's participation in the vote of the planning commission did not render it illegal in that he had sufficiently acquainted himself with the evidence and facts involved in the plaintiff's applications. The plaintiff had the burden of proof of showing that Merullo did not in fact sufficiently acquaint himself with the evidence presented and the issues raised by its applications. *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 43, 282 A.2d 894. The record and the appendix to the plaintiff's brief are devoid of any evidence to that effect, other than the fact that there was no complete transcript of the hearings available. In light of this, we can find no error in the court's conclusion, which is in itself reasonably supported by the finding that condensed versions of the proceedings were available to Merullo.

The plaintiff's next claim is that the action of the planning commission was invalid in that there was a violation of § 8-19 of the General Statutes which provides, in relevant part: "Any municipality may create by ordinance a planning commission, which

shall consist of five members, who shall be electors
of such municipality holding no salaried municipal
office." The plaintiff's claim is grounded in the fact
that Byron Johnson, who was a member of the plan-
ning commission, held a salaried position as the
city's part-time tree warden. While it is true that
Johnson was, at the institution of the proceedings
involved herein, a member of the planning commis-
sion, he resigned from that commission at the begin-
ning of the April 15 meeting, wishing to avoid any
apparent conflict of interest resulting from his
employment by the city. Thus, he did not vote at
the meeting on April 15 and was not even present
at the meeting on June 17 when the final action of
the planning commission was taken. The court also
specifically found that after he resigned, Johnson
never contacted any other members of the planning
commission and had no influence on their votes.

The plaintiff apparently would have this court
hold that the mere participation of Johnson in the
first hearing on March 4 in some way invalidated
the proceedings thereafter, despite Johnson's resig-
nation and nonparticipation in any of the votes of
the commission. We find no merit in this position.
The plaintiff concedes that Johnson's participation,
in itself, might have been of little consequence, but
that it was a significant element in a "mosaic of
impropriety, illegality and basic inequity." While
this is colorful language, it does nothing to alter
the fact that when the plaintiff's petitions were
acted upon, Johnson was not a member of the plan-
ning commission and could not be in violation of
§ 8-19.

The plaintiff's final claims are addressed to the
proceedings of the common council, acting as the

zoning commission pursuant to § 8-1 of the General Statutes. It first argues that the action of the common council in permitting the mayor to act as the moderator of its meeting on September 1, 1970, rendered its decision invalid. The gist of this contention is that § 8-1 vests the zoning power in a municipality's legislative body, in Danbury the common council, and that, according to article III, § 32, of the Danbury charter, the mayor is not a member of the council and thus should not have been allowed to moderate the meeting. This argument is without merit. While the Danbury city charter does not confer membership on the common council on the mayor, it does specifically require him to "preside over all meetings of the Common Council." Danbury Charter, Art. III, § 32. Furthermore, this court, when faced with a similar situation in *Senior* v. *Zoning Commission,* 146 Conn. 531, 153 A.2d 415, appeal dismissed, 363 U.S. 143, 80 S. Ct. 1083, 4 L. Ed. 2d 1145, said (p. 536) : "The use of a moderator not a member of the commission at the public hearing was perhaps not good procedure. It is the commission which is to hold the hearing under the applicable statute, § 8-3. The plaintiff, however, has failed to prove that the hearing itself was conducted in an illegal manner. That being so, we cannot hold, as a matter of law, that the mere fact that one not a member of the commission was called upon to serve as moderator in and of itself invalidated the meeting. He may have been better qualified to conduct it than any member of the commission." In light of this decision and the particular provisions of the Danbury charter, the fact that the mayor moderated the meeting cannot be held to constitute reversible error, at least in the absence of a showing that the meeting was conducted illegally.

Finally, the plaintiff maintains that the action of the common council, through its moderator, in refusing to choose electors as alternate members to replace disqualified members at the September 1 meeting was illegal. Twenty of the twenty-one members of the common council were present on that date, but two members disqualified themselves. The moderator refused to permit the appointment of electors as alternates to replace the two disqualified members. It is the plaintiff's position that this refusal violated § 8-11 of the General Statutes.

The relevant portions of § 8-11 read, at the time of the proceedings in question,[2] as follows: "No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the *hearing or decision* of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. In the event of such disqualification . . . the remaining members of the commission or board . . . shall choose an elector to act as a member of such commission or board in the *hearing and determination* of the particular matter or matters in which the disqualification arose." (Emphasis added.) The plaintiff con-

---

[2] Section 8-11 was amended by Public Act No. 763, § 6, of the 1971 legislature to read, in relevant part, as follows: "No member of any zoning commission or board and no member of any zoning board of appeals shall participate in the hearing or decision of the board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense. In the event of such disqualification, such fact shall be entered on the records of the commission or board and . . . replacement shall be made from alternate members pursuant to the provisions of sections 8-1b and 8-5a."

This statute in effect eliminated the procedure of choosing electors, replacing it with a system of regular alternate members as established by §§ 8-1b and 8-5a.

tends that the statute required the appointment of alternate members to act at the meeting on September 1, 1970.

"In the interpretation of the language of a legislative enactment, the question is as to the expressed intention, that is, the intention of the legislative body 'as found from the words employed to make it manifest.'" *Park Regional Corporation* v. *Town Plan & Zoning Commission*, 144 Conn. 677, 682, 136 A.2d 785; *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 438, 28 A. 540. Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say. *Lee* v. *Lee*, 145 Conn. 355, 358, 143 A.2d 154. The intent of § 8-11, as expressed in the words of the statute, is that a disinterested member or alternate attend a hearing and then participate in the decision on an issue. This intent is indicated by the provision of the statute forbidding an interested member from participating in the "hearing *or* decision" (emphasis added), which is followed by a provision directing that a disinterested replacement be chosen to participate in the "hearing *and* determination" of the matter in issue. (Emphasis added.) That the legislature intended the use of the word "and" is indicated by its use of the word "or" in a preceding sentence and by the fact that the two sentences, when read together, are logically related and not inconsistent with one another. "Or" can be construed as "and" and vice versa only where such clearly appears to have been the legislative intent. 2 Sutherland, Statutory Construction (3d Ed.) § 4923, p. 450.

The record discloses that the two councilmen who disqualified themselves did not do so until the time the plaintiff's petitions were to be voted upon. The plaintiff nonetheless argues that electors should

have been chosen to replace them for purposes of the vote, despite the fact that there would have been no opportunity for them to attend a hearing or otherwise to acquaint themselves with the issues involved, and claims that the failure to do so rendered the council's vote illegal. To do this not only would be in conflict with § 8-11, as interpreted above, but also, if allowed by the moderator, would almost certainly have resulted in an invalid action by the council in that two electors would have participated in the decision who had clearly had insufficient opportunity to acquaint themselves with the petitions. This would appear to be precisely the type of situation that the legislature sought to guard against by requiring, in § 8-11, that alternates participate in both the "hearing and determination" of the issue involved. Since a quorum was present and voting at the meeting on September 1 even without the two abstaining members, we find no error in the moderator's refusal to seat alternate electors.

There is no error.

In this opinion HOUSE, C. J., and SHAPIRO, J., concurred.

BOGDANSKI, J. (dissenting). On the basis of the trial court's own finding of facts I cannot but conclude that there was error as a matter of law in holding that Vincent DeFlumeri was not disqualified to participate and vote in the planning commission's deliberations.

The trial court found the following facts: DeFlumeri owned 25 percent of Ridge Realty Corporation, with the balance of the corporation being owned by his mother and sister. Ridge Realty owned Beaver Brook Hall, which was located about seven-tenths

of a mile from the campus of Western Connecticut State College. Beaver Brook Hall was an off-campus dormitory for students who could not find rooms on campus. Although it contained forty rooms, housing eighty-one students when full, De-Flumeri had been unable fully to rent Beaver Brook Hall. The rent at Beaver Brook Hall was $345 per student per semester, and a $35 breakage deposit was required. The trial court found that St. George Terrace, if approved, would not financially injure Beaver Brook Hall. But it also found that "[t]he availability of St. George Terrace may possibly alleviate the shortage of off-campus housing at Western Connecticut State College until the proposed and planned dormitories were constructed by the college."

General Statutes § 8-21 provides, in part: "No member of any planning commission shall participate in the hearing or decision of the commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense."

As a public officer, a member of a planning commission "must not be permitted to place himself in a position in which personal interest may conflict with his public duty." *Low* v. *Madison,* 135 Conn. 1, 8, 60 A.2d 774. It is the policy of the law to keep the official so far from temptation as to ensure his unselfish devotion to the public interest. The modification of zoning regulations must command the highest public confidence. Anything which tends to weaken public confidence is against public policy. *Kovalik* v. *Planning & Zoning Commission,* 155 Conn. 497, 498, 234 A.2d 838; *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 499–500, 191

A.2d 250; *Mills* v. *Town Plan & Zoning Commission,* 144 Conn. 493, 498, 499, 134 A.2d 250; *Low* v. *Madison,* supra. The test is not whether personal interest does conflict, but whether it reasonably might conflict. *Josephson* v. *Planning Board,* 151 Conn. 489, 493–95, 199 A.2d 690.

In my view, the trial court failed to apply the correct legal test. The DeFlumeri family received substantial revenues from Beaver Brook Hall, but were already having difficulty keeping it fully occupied. The construction of a housing complex in Danbury, with recreational and commercial facilities, which might attract even a few students who might otherwise live in Beaver Brook Hall, was no imaginary, remote or insubstantial threat to DeFlumeri's financial interests. That DeFlumeri's vote on the planning commission may in fact have been untainted is not the relevant consideration. A personal or financial interest that reasonably might conflict suffices to require disqualification. *Kovalik* v. *Planning & Zoning Commission,* supra; *Mills* v. *Town Plan & Zoning Commission,* supra; *Low* v. *Madison,* supra. On the facts of this case, as a matter of law, DeFlumeri was disqualified from sitting and voting on the plaintiff's petitions. Since he failed to disqualify himself, the action of the planning commission disapproving those petitions was void. *Kovalik* v. *Planning & Zoning Commission,* supra.

The plaintiff is entitled to raise the planning commission irregularity in its appeal from the action of the common council. Since the report of the planning commission was advisory only, and not binding, the plaintiff could not appeal from it directly. *East Side Civic Assn.* v. *Planning & Zoning*

*Commission,* 161 Conn. 558, 560, 290 A.2d 348. But after a final, binding decision was rendered by the common council, any planning commission irregularities which might have influenced the result could provide the basis for an appeal from the common council decision. *RK Development Corporation* v. *Norwalk,* 156 Conn. 369, 373–74, 242 A.2d 781. "Although the planning commission is an entity separate in membership and authority from the common council, it is an arm of the council and performs important preliminary work and makes recommendations on all plans submitted to it which must ultimately be passed on by the council." *RK Development Corporation* v. *Norwalk,* supra, 373. The preclusion of such an indirect attack on planning commission irregularities would insulate the commission members from claims of conflict of interest, prejudice and partiality, however meritorious, and prevent the imposition of the standards of rectitude set forth in *Low* v. *Madison,* supra, and General Statutes § 8-21. The impact of the planning commission's adverse report on the final determination of the common council is unquestioned. The ten-to-eight council vote in favor of the plaintiff's petitions would have sufficed for approval had the planning commission report not been unfavorable. General Statutes § 8-3a.

"The failure of the planning commission to report prior to or at the hearing [of the common council] shall be taken as approval of such proposals." General Statutes § 8-3a. In effect, no report was ever transmitted to the common council by the planning commission, since the adverse report was invalidated by the participation of DeFlumeri. The plaintiff's applications were therefore approved by the majority vote of the common council.

I would find error and remand the case to the Court of Common Pleas in Fairfield County with direction to set aside the judgment and sustain the appeal.

In this opinion LOISELLE, J., concurred.