[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE
The plaintiffs have brought this action against the defendants, William W. Backus Hospital ("Backus"), Barbara Larson ("Larson"), John Brooks ("Brooks") and Mark Schroeder ("Schroeder"), alleging in a sixteen-count amended complaint abuse of process, false imprisonment, infliction of emotional distress, negligence per se, negligence, breach of fiduciary duty, tortious discharge, outrageous conduct, violation of General Statutes 17-206, unfair trade practices and loss of consortium. Counts one through thirteen are brought by CT Page 6448 plaintiff, Lewis Venturi, and counts fourteen and fifteen are brought by plaintiff, Pamela Venturi. Count sixteen is not captioned and contains a single allegation that merely states that "Counts Four, Five, Six, Seven and Eight are incorporated by reference . . ."
The plaintiffs make the following allegations in their complaint. Plaintiff, Lewis Venturi ("plaintiff"), was employed by defendant Backus as a truck driver. On February 15, 1991, plaintiff and Robert Coggeshall ("Coggeshall"), plaintiff's co-worker, had a disagreement regarding plaintiff's use of military time on his time card. Coggeshall then directed plaintiff to attend a meeting at Human Resources at approximately 1:00 p. m. Plaintiff reported to the Human Resources office and eventually spoke with Brooks. Following the discussion between plaintiff and Brooks, plaintiff went to Larson's office and met with Larson and Coggeshall. Larson refused to allow plaintiff to tape record the meeting and, when plaintiff refused to give up the recorder, Larson ended the meeting and suspended plaintiff pending further investigation.
Subsequently, Brooks obtained a State of Connecticut Department of Mental Health Emergency Certificate Form, filled out the form and induced Schroeder to sign it. Backus directed some of its employees to guard plaintiff to prevent him from leaving and he was taken by ambulance to Elmcrest Hospital, a hospital for the treatment of mental illness, where he was involuntarily committed and confined until February 25, 1991. Following his release from Elmcrest, plaintiff was wrongfully terminated from his employment.
As a result of defendants' alleged misconduct, plaintiff claims he sustained various injuries, including confinement at the institution, loss of personal liberty, physical, mental and emotional trauma, depression and post traumatic stress syndrome. Plaintiffs seek to recover damages, costs and attorney's fees.
On January 19, 1993, defendants filed a motion to strike counts three through sixteen of plaintiffs' amended complaint and paragraphs three through seven of plaintiffs' prayer for relief. CT Page 6449
A motion to strike tests the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142 (1989); Practice Book 152. When ruling on a motion to strike, the court is restricted to the alleged facts and the court must construe those facts in the light most favorable to the nonmoving party. Rowe v. Godou, 209 Conn. 273, 278 (1988). The motion to strike admits all well-pleaded facts, but it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc.,196 Conn. 91, 108 (1985). If the facts provable under the pleadings would support a defense or a cause of action, the motion to strike must fail. Id. 109.
COUNT THREE
Count three of the revised complaint is brought by plaintiff and is directed to all defendants. This count sets forth claims of intentional and negligent infliction of emotional distress.
Defendants move to strike count three on several grounds. Initially, defendants argue that plaintiff has improperly joined claims of intentional infliction of emotional distress and negligent infliction of emotional distress in a single count. Defendants further contend that, even if plaintiff had separately pleaded these claims, the claims are legally insufficient because they are barred by the exclusivity provisions of the Workers' Compensation Act.
1. Improper Joinder of Claims
Plaintiff's tortious claims arise out of the "same transaction or transactions connected with the same subject of action" and, pursuant to Practice Book 133(7), such claims are properly joined in a single complaint. Practice Book 147(3) provides that a party may file a request to revise whenever the party wishes to obtain a "separation of causes of action which may be united in one complaint when they are improperly combined in one count . . ." A motion to strike, however, is utilized to contest "the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or more counts . . ." Practice Book 152(4).
In Rowe v. Godou, supra, a plaintiff had combined CT Page 6450 separate causes of action against an individual defendant and a defendant municipality within a single count. The defendant filed a motion to strike, but the court observed that there was nothing to prevent plaintiff from joining these two possible causes of action in a single complaint and it emphasized that "the proper way to cure any confusion in that regard is to file a motion to revise, not a motion to strike the entire complaint. Id. 279.
Similarly, in the present case, nothing prevents plaintiff from combining claims of intentional and negligent infliction of emotional distress within a single complaint and defendants should have challenged plaintiff's joinder of such claims within a single count by way of a request to revise, not by a motion to strike.
Accordingly, defendants have used an improper procedural vehicle to challenge plaintiff's joinder of causes of action within a single count and defendants' motion to strike count three on this ground must be denied.
2. Exclusivity of Workers' Compensation Act
Defendants also move to strike count three on the ground that the exclusivity provisions of the Workers' Compensation Act bar plaintiff's claims of intentional infliction of emotional distress and negligent infliction of emotional distress.
The purpose of a pleading is to apprise the court and opposing counsel of the issues to be tried and if "a party seeks the admission of evidence which is consistent with a prima facie case, but nevertheless would tend to destroy the cause of action, the `new matter' must be affirmatively pleaded as a special defense." Pawlinski v. Allstate Ins. Co., 165 Conn. 1, 6 (1973). "A special defense is a matter which is consistent with statements in the plaintiff's complaint that show, despite those allegations, that the plaintiff has no cause of action." Air Flo v. Consolidated Engineers and Constructors, Inc.,5 Conn. L. Rptr. 460 (January 13, 1992, Fuller, J.)
In Grant v. Bassman, 221 Conn. 465 (1992), the court addressed the issue of whether a claim that an injured plaintiff elected workers' compensation as an exclusive CT Page 6451 remedy should be raised by a motion to dismiss or by a special defense. In Grant, the plaintiff sought damages for injuries he suffered as a minor, while he had been illegally employed by defendant. However, the plaintiff had previously applied for, and received, workers' compensation benefits for his injuries. The defendants moved to dismiss on the ground that the trial court lacked subject matter jurisdiction over the matter because plaintiff had elected workers' compensation as his exclusive remedy, and thus, the workers' compensation commission retained sole jurisdiction over plaintiff's claims. The Supreme Court stated at page 472-73:
 This provision, however, is not at all a denial of jurisdiction in the Superior Court, as such, but is basically a destruction of an otherwise existent common-law right of action. . . . In other words, there is not a lack of jurisdiction in the court but a want of a cause of action in the plaintiff. . . . The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. Practice Book 164. The claim that a plaintiff has elected an exclusive remedy relies on facts outside those alleged in the complaint that operate to negate what may once have been a valid cause of action. It is therefore both rational and fair to place the burden of pleading and proving an election of remedies on the party asserting the claim, usually the defendant. . . . In the present case, [the defendant] asserted in a motion to dismiss that regardless of the truth of the allegations in the plaintiffs' complaint, they could not maintain a common law action because [the plaintiff] had elected workers' compensation as his exclusive remedy. We conclude, however, that a special defense and not a motion to dismiss was the proper vehicle for [the defendant's] challenge to the CT Page 6452 plaintiffs' complaint.
(Internal quotation marks and citations omitted. Emphasis by the court.)
Although Grant v. Bassman decided this issue in the context of a motion to dismiss, several cases decided after Grant v. Bassman have extended the Grant rationale to motions to strike. See Cecere v. LaBonne's Epicure, Inc., 8 CTLR 465 (March 11, 1993, Wagner, J.) (special defense, not a motion to strike, is the appropriate procedural vehicle to challenge plaintiff's complaint on the ground that the exclusivity provision of the Workers' Compensation Act bars the action); Kinosh v. Stephen Chevrolet, Inc., Superior Court, Judicial District of Hartford-New Britain at Hartford, Docket No. 506307 (February 10, 1993, Dunn, J.) (questions concerning the exclusivity of the Workers' Compensation Act must be raised by a special defense).
In the present action, defendants are moving to strike plaintiff's claims of intentional and negligent infliction of emotional distress on the ground that the Workers' Compensation Act is plaintiff's exclusive remedy. A motion to strike tests the legal sufficiency of a pleading; but, here, defendants have moved beyond a challenge to the legal sufficiency of count three. Defendants are actually challenging the allegations in count three on the ground that such allegations are simply not maintainable as a cause of action at all, a challenge that is properly raised by way of a special defense.
Therefore, the defendants' motion to strike count three on the ground of the exclusivity provision of the Workers' Compensation Act must also be denied on the basis that the defendants have used an improper vehicle to challenge count three on this ground.
COUNTS FOUR AND FIVE
Count four is captioned "Defendant [sic] Venturi — As to Defendant Schroeder — Negligence Per Se." Count four alleges that Schroeder violated General Statutes 17-183 (now17a-502), which provides for involuntary commitment to a mental institution by an emergency certificate. Count five is a negligence per se claim directed against Backus, which CT Page 6453 incorporates all of the allegations set forth in count four and further alleges Backus is liable under a theory of negligence per se.
Defendants move to strike counts four and five on the ground that these counts are barred by the exclusivity provision of the Workers' Compensation Act. Defendants also move to strike these counts on the ground that they fail to state a claim because plaintiff has failed to allege facts to bring himself within the class of persons whom General Statutes 17a-502 was intended to protect and in that the harm he allegedly suffered was not of the type that said statute was intended to prevent.
1. Exclusivity of Workers' Compensation Act
The Workers' Compensation Act provides the exclusive remedy for an employee injured in the course of employment. Saporoso v. Aetna Life Casualty Co., 221 Conn. 356,368 (1992).
In McNamara v. Hamden, 176 Conn. 547, 550 (1979), the Supreme Court stated:
 It is an axiom of workmen's compensation law that awards are determined by a two-part test. The employee has the burden of proving that the injury claimed arose out of the employment and occurred in the course of the employment. "There must be a conjunction of the two requirements, `in the course of the employment' and `out of the employment' to permit compensation. The former relates to the time, place and circumstance of the accident, while the latter refers to the origin and cause of the accident."
At the time of the alleged misconduct, plaintiff was on the premises during the course of a workday, which comes within the definition of "period of employment." Id. 551. Further, plaintiff was attending a meeting in the Human Resources office, a place where an employee could reasonably be, and was attending the meeting pursuant to a disagreement CT Page 6454 regarding his time card and attendance and the meeting could be considered incidental to the duties of his employment. However, although plaintiff's injuries arose "in the course of employment," the injuries did not arise "out of the employment" for purposes of the Workers' Compensation Act. There must be a conjunction of these two requirements and, in order for an injury to arise "out of the employment," there must be a direct causal connection between the injury and the employment as explained in McDonough v. Connecticut Bank Trust Co., 204 Conn. 104, 117 (1987), as follows:
 `The causal connection required to be established is, that the employment was the proximate cause of the injury, and this rule obtains whether the injury be the result of accident or disease. . . . Before he can make a valid award the trier must determine that there is a direct causal connection between the injury, whether it be the result of accident or disease, and the employment. The question he must answer is, was the employment a proximate cause of the disablement, or was the injured condition merely contemporaneous or coincident with the employment? If it was the latter there can be no award made. . . .'
In Wilder v. Russell Library Co., 107 Conn. 56
(1927), an employee, who had a history of mental problems, incurred a physical and nervous breakdown as a result of working long hours. Her problems developed into a mental condition akin to insanity and she eventually committed suicide. The claims commissioner awarded compensation to the claimant, decedent's dependent, and the employer appealed. The Supreme Court dismissed the appeal, finding no error in the trial court's decision which sustained the award. The court stated at page 62:
 Cases where insanity can be said to arise out of the employment or the conditions under which it is required to be performed, particularly in the absence of traumatic injury, must be very rare. Where such a claim is made, a CT Page 6455 commissioner must give careful consideration to all the circumstances in evidence before him, not merely those surrounding the employment, but also those which have to do with any hereditary predispositions to mental disorder on the part of the employee, with his personal characteristics, and with his conditions of life outside the employment. Compensation is not to be awarded unless it is properly found that the insanity is traceable to the employment or its conditions as the direct causal agency which produced it, and that, had it not been for that employment or those conditions, it would not have occurred.
In the present case, plaintiff alleges that he suffered injuries as a result of defendants' improper use of the legal process authorized by Connecticut's Commitment Under Emergency Certificate statute. Thus, although the alleged "misconduct" which gave rise to the injuries may have occurred contemporaneously, or coincidentally, within the employment, there is no direct causal connection between the alleged misconduct, or the resultant injuries, and the employment itself.
Inasmuch as plaintiff's alleged injuries did not arise "out of the employment" for purposes of the Workers' Compensation Act, defendants' motion to strike on the ground that this matter is barred by the exclusivity provisions of the Workers' Compensation Act must be denied.
2. Negligence Per Se
Defendants further move to strike counts four and five on the ground that plaintiff has failed to allege facts to bring himself within the class of people whom General Statutes 17a-502 was intended to protect and that the harm suffered by plaintiff was not the type of harm that the statute was intended to prevent.
General Statutes 17a-502 (formerly 17-183) provides in part: CT Page 6456
 (a) Any person who a physician concludes is mentally ill and dangerous to himself or others or gravely disabled, and is in need of immediate care and treatment in a hospital for mental illness, may be confined in such a hospital, either public or private, under an emergency certificate as hereinafter provided for not more than fifteen days without order of any court. . .
In other subsections, 17a-502 provides that certain information shall be stated on the emergency certificate, contains various safeguards for those who have been confined and mandates discharge for individuals who do not meet the criteria for emergency detention and treatment.17a-502(b), (c), (d), (f).
Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery. Wright v. Brown,167 Conn. 464, 468 (1975). Thus, "[s]tatutory negligence is actionable upon satisfaction of two conditions: (1) the plaintiff must be a member of the class protected by the statute; and (2) the injury must be of the type the statute was intended to prevent." Small v. South Norwalk Savings Bank, 205 Conn. 751, 760 (1988).
In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. Ford Motor Credit Union v. B.W. Beardsley, Inc., 208 Conn. 13, 20
(1988). Further, a statute should be construed so that no part of the legislative enactment will be treated as insignificant and unnecessary. 84 Century Limited Partnership v. Board of Tax Review, 207 Conn. 250, 263
(1988).
Section 17a-502 provides a statutory framework within which a mentally ill and dangerous individual, or one who is gravely disabled, may be involuntarily committed to a mental hospital for a limited period of time. However, the statute contains numerous safeguards designed to protect CT Page 6457 people who do not meet the criteria for emergency detention and treatment and mandates that the emergency certificate contain certain information relating to the personal examination of the individual to be confined, as well as the physician's findings relating to the mental and physical condition of the individual. Therefore, 17a-502 seeks to protect an individual from involuntary commitment who is not "mentally ill and dangerous to himself or others or gravely disabled, and is [not] in need of immediate care and treatment in a hospital for mental illness."
Since the statute was designed to protect individuals who are not mentally ill, plaintiff has failed to allege that he was a member of the class meant to be protected under the statute. Although plaintiff has alleged that Schroeder did not comply with certain requirements of the statute, he has failed to allege that he was not a person to be confined pursuant to the statute.
Plaintiff argues in his memorandum that it is implicit within plaintiff's allegation that plaintiff was not a person who fit the criterion for involuntary commitment. However, for purposes of a motion to strike, the court may not look beyond the facts as alleged in the complaint. Connecticut State Oil Co. v. Carbone, 36 Conn. Sup. 181,182-83 (Super.Ct. 1979).
Accordingly, defendants' motion to strike counts four and five must be granted on this ground.
COUNTS SIX AND SEVEN
In count six, plaintiff alleges negligence as to Schroeder. Generally, plaintiff alleges that Schroeder owed a duty to plaintiff to exercise the prevailing professional standard of care within the meaning of General Statutes section 52-184c(a) and that Schroeder breached this standard of care in various ways.
Count seven, which incorporates the allegations of count six, is captioned "Negligence as to Defendant Backus Respondent Superior." Count seven alleges that Backus is liable for the negligence of Schroeder, the agent, servant and employee of Backus. CT Page 6458
Defendants move to strike counts six and seven based upon the exclusivity of the Workers' Compensation Act, and on the basis that neither count alleges that plaintiff was wrongfully committed as a result of the acts, or omissions, of the defendants.
1. Exclusivity of Workers' Compensation Act
The court has previously concluded that the Workers' Compensation Act does not apply to the present case.
2. Negligence
Negligence is conduct which creates an undue risk of harm to others. Logan v. Greenwich Hospital Assn.,191 Conn. 282, 299 (1983). Essential elements for a negligence cause of action are a breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff. Catz v. Rubenstein,201 Conn. 39, 44 (1986). Further, as stated in Campbell v. Palmer, 20 Conn. App. 544, 548 (1990):
 A physician is required by law to exercise the degree of skill, care and diligence that is customarily demonstrated by physicians in the same line of practice. The physician must exercise such reasonable skill and diligence in all aspects of providing care and treatment to a patient. Whether a physician's conduct was sufficient to meet the appropriate standard of care or whether such conduct was unskillful presents questions of fact for a jury to decide.
(Citations omitted.)
In the present case, plaintiff has alleged that Schroeder owed a duty to plaintiff to exercise the prevailing and professional standard of care; Schroeder breached the prevailing professional standard of care; and plaintiff's various injuries and damages were proximately caused as a result of Schroeder's negligence. Viewing the alleged facts in the light most favorable to the nonmoving party, plaintiff CT Page 6459 has alleged a duty, a breach of that duty and that his injuries were proximately caused by Schroeder's negligence.
Accordingly, plaintiff has sufficiently pled the essential elements of a negligence cause of action and defendants' motion to strike counts six and seven on the ground that plaintiff has failed to allege that he was wrongfully committed must be denied.
COUNT EIGHT
In count eight, plaintiff alleges negligence per se and breach of a fiduciary duty as to Backus.
Defendants move to strike count eight on the basis that it is subject to the exclusivity provisions of the Workers' Compensation Act and because this count does not contain any allegations that plaintiff was sane, or otherwise not subject to commitment, at the time of the alleged events.
1. Exclusivity of Workers' Compensation Act
The court has previously concluded that this action does not arise out of plaintiff's employment for purposes of the Workers' Compensation Act.
2. Negligence Per Se and Breach of a Fiduciary Duty
As set forth in the discussion concerning counts four and five, in order to maintain a negligence per se action, plaintiff must claim he is a member of the class of people whom 17a-502 was intended to protect. The court has concluded that this statute was designed to protect persons who are not mentally ill and dangerous, or gravely disabled, from wrongful commitment.
In the context of count eight, plaintiff has pled that Brooks breached his fiduciary duty to plaintiff in that Brooks ignored and violated his duty to respect plaintiff's autonomy and right to self-determination by intervening to make a decision that plaintiff be hospitalized without reasonable justification.
Defendants move to strike count eight, in part, on the ground that it does not contain an allegation that CT Page 6460 plaintiff was sane, or otherwise subject to commitment. However, the plaintiff has claimed that he was hospitalized without reasonable justification and defendants' motion to strike count eight must be denied because the plaintiff has alleged that he was wrongfully committed.
COUNT NINE
Count nine is brought by plaintiff against Backus for "Tortious Discharge for Reasons Violative of Public Policy. . ." Specifically, plaintiff alleges that he was an at-will employee of Backus and that, on February 15, 1991, Larson mailed a certified letter to plaintiff's residence stating that plaintiff was suspended without pay and ordering plaintiff to immediately upon his release from involuntary commitment contact her office to arrange an appointment. Plaintiff claims that this communication further stated the threat that, if plaintiff did not contact Larson within three days of his release, his employment would be immediately terminated and that on February 28, 1991, plaintiff, through an attorney, contacted Larson to arrange an appointment and that, through the attorney, plaintiff indicated to Larson that he felt a need to bring his attorney to the meeting Larson now wanted. Plaintiff contends that Larson refused to meet with him if he attended the meeting with his attorney and that Larson then terminated plaintiff from his employment with Backus using as a pretextual reason that plaintiff had not within three days of his release from Elmcrest made an appointment to see Larson.
Plaintiff maintains that his discharge implicates various public policies of the State of Connecticut. For example, plaintiff alleges that the state has an important public policy that people not be involuntarily committed to a hospital for mental illness except in accordance with the provisions of General Statutes 17-183; that people shall be secure in their persons from unreasonable seizures as expressed in Article I section 7 of the State Constitution; that Backus fired plaintiff because he was trying to protect himself from again being unreasonably seized and involuntarily committed to a hospital for mental illness not in accordance with 17-183; that the state has an important public policy that individuals shall utilize the assistance of counsel to protect liberty and property interests; and that the state has a public policy that persons not be denied CT Page 6461 employment or discriminated against in employment because of mental disorder or mental disability.
Defendants move to strike count nine, arguing that it fails to implicate the public policy exception to Connecticut's rule of employment at will, that it does not violate any well-established public policy and that plaintiff cannot maintain a wrongful discharge action when a specific statutory remedy is available.
Connecticut adheres to the general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will. Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 474 (1980). However, the doctrine of wrongful discharge is a narrow exception to this rule and provides that an "employer may be liable for the discharge of an at will employee at least in cases where `the discharge contravenes a clear mandate of public policy.'" D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 211 n. 1 (1987).
However, in Morris v. Hartford Courant Co.,200 Conn. 676, 680 (1986), the court acknowledged the "inherent vagueness of the concept of public policy" and indicated that a public policy violation could be based upon a "judicially conceived notion of public policy" as well as on an "explicit statutory or constitutional provision." In Morris, the court concluded that a false, but negligently made, accusation of criminal conduct as a basis for dismissal is not a demonstrably improper reason for dismissal and is not derived from some important violation of public policy. Id.
Thus, Connecticut recognizes that "employees who are discharged for reasons that violate public policy are entitled to a modicum of judicial protection." Carbone v. Atlantic Richfield Co., 204 Conn. 460, 467 (1987). However, when a discharged employee has an adequate remedy through which to redress wrongful conduct on the part of an employer, such conduct will not support a wrongful discharge cause of action. See, e.g., Atkins v. Bridgeport Hydraulic Company,5 Conn. App. 643 (1985) (court lacked subject jurisdiction because plaintiff failed to exhaust appellate review procedures after filing complaint with CHRO).
Section 17a-502 evinces a public policy that CT Page 6462 individuals who are subject to involuntary commitment shall be committed only after the statutory requirements are met. See Hirsch v. Braceland, 144 Conn. 467-68 (1957) ("The validity of any detention under [this] statute . . . is circumscribed in time and conditioned upon the proper execution of a certificate by a physician licensed to practice medicine or surgery in Connecticut.")
Section 17a-502(a) provides in pertinent part that:
 At the time of delivery of such person to such hospital, there shall be left, with the person in charge thereof, a certificate, signed by a physician licensed to practice medicine or surgery in Connecticut and dated not more than three days prior to its delivery to the person in charge of the hospital. Such certificate shall state the date of personal examination of the person to be confined, which shall be not more than three days prior to the date of signature of the certificate, shall state the findings of the physician relative to the physical and mental condition of the person and the history of the case, if known, and shall state that it is the opinion of the physician that the person examined is mentally ill and dangerous to himself or herself or others or gravely disabled and is in need of immediate care and treatment in a hospital for mental illness. Such physician shall state on such certificate the reason for his or her opinion.
By incorporating the allegations of count one into count nine, plaintiff alleges in count nine that defendants violated 17a-502 in various ways and plaintiff claims that he was terminated from his employment because he was trying to protect himself from again being unreasonably seized and involuntarily committed to an institution in derogation of this statute. In Sheets v. Teddy's Frosted Foods, Inc., supra, 480, the court observed that we "need not decide whether violation of a state statute is invariably a CT Page 6463 prerequisite to the conclusion that a challenged discharge violates public policy. Certainly, when there is a relevant state statute we should not ignore the statement of public policy that it represents."
In the present case, plaintiff has sufficiently alleged a violation of a "statement of public policy" through his allegations concerning defendants' failure to conform to the statutory requirements of 17a-502. Therefore, defendants' motion to strike count nine on this ground must be denied.
Defendants further move to strike count nine on that ground that plaintiff cannot maintain a wrongful discharge action when a specific statutory remedy is available. Defendants contend that General Statutes 46a-51
er [et] seq., (Human Rights and Opportunities Act) provides plaintiff with a statutory remedy. However, plaintiff's statutory remedy is not provided by section 46a-51 et seq., but, rather, is provided by General Statutes 17a-549 and17a-550, which provide a cause of action for anyone who has been "denied employment . . . solely because of a present or past history or mental disorder . . ."
Thus, plaintiff has a statutory remedy pursuant to sections 17a-549 and 17a-550 and defendants' motion to strike count nine must be granted as to count nine on this ground.
COUNT TEN
Count ten is captioned "Lewis Venturi — As to Defendant Larson and Defendant Backus — Outrageous Conduct Causing Emotional Distress and Special Damages." Defendants move to strike count ten on the ground that Connecticut does not recognize "outrageous conduct" as an independent tort. Plaintiff responds that count ten sets forth a claim of intentional infliction of emotional distress.
Four elements must be alleged to establish a cause of action for intentional infliction of emotional distress: (1) the defendant intended to inflict emotional distress, or knew, or should have known, that emotional distress was a likely result of the defendant's conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's distress; and (4) the emotional distress CT Page 6464 suffered by the plaintiff was severe. Petyan v. Ellis,200 Conn. 243, 253 (1988).
Count ten alleges that Larson's conduct was extreme and outrageous and wilful and malicious in that her acts were intentional; she knew that the natural consequence of her acts would cause plaintiff severe emotional distress, embarrassment, humiliation, degradation, indignity, anxiety and anguish; and she harbored a specific malicious intent to cause plaintiff such harm.
Thus, although count ten is captioned "Outrageous Conduct," plaintiff has pled the four elements required to establish an intentional infliction of emotional distress action against Larson. Therefore, defendants' motion to strike count ten on the ground that Connecticut does not recognize a cause of action for "outrageous conduct" must be denied.
COUNT ELEVEN
Count eleven alleges a violation of General Statutes 17-206 (now 17a-549). Generally, plaintiff alleges that he was denied employment solely because he was suffering from a mental disorder which disabled him from complying with Larson's demand that he meet alone with her to discuss his employment with Backus.
Defendants move to strike count eleven on the basis that allowing plaintiff to proceed under 17a-549 would be improper since the Connecticut legislature has specified a detailed and comprehensive administrative scheme to deal with claims of discrimination.
To the extent that defendants are claiming that plaintiff has no cause of action under 17a-549 due to the existence of 46a-51, et seq., this challenge should have been raised by the way of a special defense for the same reasons previously noted concerning the propriety of raising a Workers' Compensation Act exclusivity challenge on a motion to strike and the motion to strike count eleven must be denied.
COUNTS TWELVE AND THIRTEEN CT Page 6465
Counts twelve and thirteen allege unfair trade practices as to Backus and Schroeder, respectively.
Plaintiff alleges that he was caused various actual damages, including expenses incurred as a result of his hospitalization at Elmcrest, expenses relating to treatment for conditions relating to the physical, emotional and mental injuries he has suffered and damages relating to the loss of wages and benefits that resulted because he was rendered disabled from gainful employment for a period of time.
General Statutes 42-110b(a) of the Connecticut Unfair Trade practices [Practices] Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Section 42-110a(4) defines "trade" and "commerce" as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Section 42-110g(a) states that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . ."
The Supreme Court, in Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254 (1988) stated:
 In determining whether a practice violates CUTPA we use the following criteria: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]. CT Page 6466
(Citations and internal quotation marks omitted.)
Defendants move to strike counts twelve and thirteen on the ground that these counts are barred by the exclusivity provisions of the Workers' Compensation Act. Defendants also move to strike these counts on the grounds that CUTPA is inapplicable to disputes arising out of the employer-employee relationship, that plaintiff failed to allege that a trade or transaction occurred between plaintiff and defendants and that CUTPA is inapplicable to hospitals, physicians and the practice of medicine.
1. Exclusivity of Workers' Compensation Act
The court has previously ruled that the Workers' Compensation Act does not apply to the present case.
2. Disputes Arising Out of Employer-Employee Relationship
The relationship between an employer and an employee does not fall within the ambit of trade or commerce for the purposes of a CUTPA action. Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660, 670 (1992).
Since the court has previously determined that plaintiff's injuries did not arise "out of and in the course of his employment" for purposes of the Workers' Compensation Act, the court has already determined that plaintiff's action did not arise in the contest of an employer-employee relationship and defendants' motion to strike on this ground must be denied.
3. Applicability of CUTPA to Doctors, Hospitals and the Practice of Medicine
For purposes of CUTPA, doctors, hospitals and the practice of medicine fall within the definition of a "person" and a "trade" or "commerce" for purposes of the statute. See Arcari v. Abrams, 6 CSCR 560 (May 21, 1991, Spear, J.).
Accordingly, the court denies the defendants' motion to strike on this ground.
4. Allegation of a Trade or Transaction between Plaintiff and Defendants CT Page 6467
Defendants further argue that plaintiff has not alleged that Backus and Schroeder did anything falling within the definition of trade and commerce as those terms are defined in General Statutes 42-110(a)(4).
Plaintiff has alleged that: at all times alleged in the complaint, Backus and Schroeder generally engaged in the sale and/or distribution of services related to the diagnosis and treatment of physical, mental and emotional conditions involving human beings; Schroeder sells and/or distributes services related to the examination of persons with regard to whether said persons are mentally ill and dangerous to themselves or others or gravely disabled, and in need of immediate care and treatment in a hospital for mental illness; as part of Backus' activities physicians employed by Backus sign certificates causing the involuntary confinement of persons to hospitals for the treatment of mental illness; Schroeder signed a certificate causing the plaintiff to be involuntarily confined to a hospital for the treatment of mental illness; Schroeder's conduct constituted unfair or deceptive acts or practices prohibited by CUTPA because Schroeder's conduct offended the public policy expressed in General Statutes 17-183; Schroeder's conduct was deceptive because of various alleged misrepresentations he made concerning the examination and findings made pursuant to the involuntary commitment; and Schroeder's conduct would cause substantial injury to people using the services described in count twelve.
The court finds that this dispute did not arise out of an employer-employee relationship, that CUTPA is applicable to doctors, hospitals and the practice of medicine and that plaintiff has sufficiently alleged a transaction for purposes of CUTPA.
Therefore, defendants' motion to strike counts twelve and thirteen must be denied.
COUNT FOURTEEN
Count fourteen is brought by plaintiff, Pamela Venturi, the wife of plaintiff, and alleges intentional and negligent infliction of emotional distress as to all defendants. CT Page 6468
Defendants move to strike on the ground that plaintiff fails to plead intentional and negligent infliction of emotional distress separately. Defendants also move to strike count fourteen on the basis that her claim is grounded on defendants' alleged misconduct as to her husband, that she does not allege that defendants breached a duty owed to her and that her claims are barred by the exclusivity provisions of the Workers' Compensation Act.
1. Intentional and Negligent Infliction of Emotional Distress
As set forth previously, in order to sustain an intentional infliction of emotional distress claim, the plaintiff must allege that the defendants intended to inflict the emotional distress, or knew, or should have known, that such distress was a likely result of the defendants' conduct; the conduct was extreme and outrageous; the defendants' conduct caused the plaintiff's distress; and the plaintiff sustained severe emotional distress. Petyan v. Ellis, supra.
Plaintiff wife sets forth a single incident of alleged misconduct that was directed at her, individually. She alleges that despite defendant Brook's knowledge that she would be in an emotional state, he was not patient, courteous, tactful, open and honest with her during his phone conversation with her, but was instead wilfully curt, rude, tactless, evasive and deceptive and that he terminated the phone conversation without imparting to her any sense of why her husband was being involuntarily committed to a mental hospital and without telling her where he was being taken. Plaintiff's wife also alleges that the conduct of all defendants was extreme and outrageous and that she suffered various injuries as a result thereof.
To maintain an action for negligent infliction of emotional distress, the plaintiff must plead that the defendant knew, or should have known, that its conduct involved an unreasonable risk of causing emotional distress, and that the distress, if it were caused, might result in illness or bodily harm. Buckman v. People Express, Inc.,205 Conn. 166, 173 (1987). CT Page 6469
In paragraph 142 of count fourteen plaintiff wife alleges that "[d]efendants' conduct was negligent in that defendants should have realized that their conduct involved an unreasonable risk of causing Mrs. Venturi emotional distress and that such distress if it were caused might result in illness or bodily harm."
Plaintiff has alleged sufficient facts to support claims of intentional and negligent infliction of emotional distress resulting from the alleged misconduct of defendants and, accordingly, defendants' motion to strike count fourteen on this ground must be denied.
2. Exclusivity of Workers' Compensation Act
The court has previously ruled that the Workers' Compensation Act does not apply to the present case.
Therefore, defendants' motion to strike count fourteen must be denied.
COUNT FIFTEEN
Count fifteen is brought by plaintiff, Pamela Venturi, against defendants and alleges loss of consortium. Defendants move to strike count fifteen based upon the exclusivity provisions of the Workers' Compensation Act.
The court has previously ruled that the Workers' Compensation Act does not apply to the present case.
Because a consortium claim is "derivative and inextricably attached to the claim of the injured spouse"; Izzo v. Colonial Penn Co., 203 Conn. 305, 312 (1987); the court must, therefore, deny defendants' motion to strike count fifteen.
COUNT SIXTEEN
Count sixteen incorporates counts four, five, six, seven and eight by reference and does not set forth any independent cause of action. Defendants move to strike count sixteen on the ground that it is merely redundant of the incorporated counts. CT Page 6470
Practice Book 147(2) mandates that a request to revise should be used whenever a party desires to obtain "the deletion of any unnecessary, repetitious, scandalous, impertinent, immaterial or otherwise improper allegations in an adverse party's pleading." Defendants' motion to strike count sixteen must, therefore, be denied because defendants have used an improper procedural vehicle.
PRAYER FOR RELIEF
Finally, defendants move to strike paragraphs three, four, five, six and seven of plaintiffs' prayer for relief.
Paragraphs three and four request actual and punitive damages, respectively, paragraph five requests costs and paragraph six requests attorney's fees, all requests being pursuant to General Statutes 42-110g.
Because the court has concluded that plaintiff has sufficiently alleged a CUTPA claim, defendants' motion to strike these paragraphs of plaintiffs' prayer for relief must be denied.
Paragraph seven of the prayer for relief asks for costs and defendants move to strike this paragraph, arguing that such a request is inappropriate in the context of a prayer for relief. However, defendants provide no authority for such a proposition. Accordingly, that defendants' motion to strike paragraph seven of plaintiffs' prayer for relief must be denied.
CONCLUSION
For the reasons given above, defendants' motion to strike counts four, five and nine of the amended complaint is granted, defendants' motion to strike counts three, six, seven, eight, ten, eleven, twelve, thirteen, fourteen, fifteen and sixteen of the amended complaint is denied and defendants' motion to strike paragraphs three, four, five, six and seven of plaintiffs' prayer for relief is denied.
Hendel, J. CT Page 6471