[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is an appeal by the plaintiff, Mobil Oil Corporation ("Mobil"), from a decision by the defendant, the Planning and Zoning Commission of the Town of Wallingford ("the Commission"), denying Mobil's application for a special permit and site plan approval.
Mobil filed its application with the defendant on or about June 5, 1998. A public hearing on the application was held on August 24, 1998, following which the Commission voted to deny said application. Pursuant to General Statutes, Sections 8-8 and8-10, this appeal followed. The plaintiff's Motion to Introduce Evidence in Addition to the Contents of the Record was denied CT Page 16156 after hearing held March 3, 1999. A hearing on said appeal was held on August 26, 1999, at which the plaintiff was found aggrieved for the purposes of standing to prosecute this appeal.
 II
The plaintiff, Mobil, is the lessee of real property known as 440 Main Street in the Yalesville section of the Town of Wallingford, where it operates a gasoline service station, including three bays for vehicle repair and a snack shop. By the application at issue Mobil sought to convert its existing facility into a "convenience market", eliminating the repair bays. The existing pumps for the retail sale of gasoline would remain unchanged. The property is in a CA-12 district.
In its First Amended Appeal, dated and filed October 26, 1998, Mobil claims that the Commission's denial of Mobil's special permit and site plan application was arbitrary, illegal and capricious in that:
 A. There is insufficient evidence in the record to support the Commission's denial.
 B. The credible evidence in the record supports the granting of the application.
 C. The testimony of Robert F. Parisi, a member of the Town Council that appoints the Commission members, was unduly influential and prejudicial to Mobil.
 D. The Commission's conduct and subsequent denial demonstrated its bias against Mobil once Mr. Parisi announced his position concerning the merits of Mobil's application.
 III
Judicial review of the Commission's decision is limited to a determination of whether the decision was arbitrary, illegal or an abuse of discretion, Whitaker v. Zoning Board of Appeals,179 Conn. 650, 654. The Commission is vested with a large measure of discretion, and the burden of showing the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield,217 Conn. 164, 169. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the CT Page 16157 circumstances and conditions which create the problem and shape the solution, Burnham v. Planning Zoning Commission,189 Conn. 261, 266 (citation omitted). There is a strong presumption of regularity in the proceedings of an agency such as the Commission, Frito-Lay, Inc. v. Planning Zoning Commission,206 Conn. 157, 198-99, n. 7 (citation, quotation marks omitted).
When considering an application for a special permit, a zoning authority acts in an administrative capacity and its function is to determine whether the proposed use is permitted under the regulations and whether the standards set forth in the regulations and statutes are satisfied. It has no discretion to deny a special permit if the regulations and statutes are satisfied, Daughters of St. Paul, Inc. v. Zoning Board ofAppeals, 17 Conn. App., 52, 56 (citations omitted). It does, however, have the discretion to determine whether the proposal meets the standards set forth in the regulations, Irwin v.Planning Zoning Commission, 244 Conn. 619, 628.
Commission members may rely on their personal knowledge of the property concerned, and other properties in the area, prior applications, and conditions in the community, in reaching a decision on an application, Fuller, Land Use Law Practice
(Conn. Prac. Vol. 9, 1993 ed.), Section 21.5; Holt-Lock, Inc., v.Zoning Planning Commission, 161 Conn. 182, 191.
The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, Feinson v. Conservation Commission, 180 Conn. 421, 425
(citations, quotation marks omitted). The weight to be accorded testimony, be it expert or lay, is for the Commission members to determine. When, however, the questions to be answered go beyond the ordinary knowledge of lay folk, expert testimony is required,Jaffe v. State Department of Health, 139 Conn. 339, 349. "We have in the past permitted lay members of commissions to rely on their personal knowledge concerning matters readily within their competence,, such as traffic congestion and sweet safety;"Feinson v. Conservation Commission, supra, at 427 (citations omitted).
 IV
Pursuant to General Statutes, Section 8-3c, a commission, when granting or denying a special permit, "shall state upon its records the reason for its decision." In the instant matter, the CT Page 16158 Commission voted on a motion to deny the subject application "because of demonstrated traffic problems associated with the location as well as the potential . . . increased use and density at the site". The court finds this adequately states the Commission's reason for its decision denying the plaintiffs application. It is clear from the record that the commission treated the applications for special permit and site plan approval as an integrated proposal, see Regulations, S7.1 B. Where the Commission does state its reasons for a decision the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the Commission is required to apply under the zoning regulations, Irwin v. Planning Zoning Commission, supra, at 629 (citation, quotation marks omitted). When, as here, the Commission acts in an administrative capacity, the evidence to support any such reason must be substantial, Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict if the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. ZoningCommission, 232 Conn. 122, 151. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. Inland Wetlands Agency,226 Conn. 579, 588.
 V
Under the Zoning Regulations of the Town of Wallingford ("Regulations"), Section 7.5, the defendant commission reviews and decides applications for special permit. The criteria the commission must consider in evaluating an application include:
S.7.5 B. 1. a. . The size and intensity of the proposed use or uses and its or their effect on and compatibility with the adopted Plan of Development, the specific zone and the neighborhood;
S.7.5 B 1. c. . The capacity of adjacent streets to handle peak traffic loads and hazards created by the use;
S.7.5 B.1 k. . All other standards prescribed by these Regulations CT Page 16159
Other standards prescribed by the Regulations include site plan objectives as listed in Regulations, Section 7.2, including 7.2 C. "Traffic and pedestrian access. — That all proposed traffic and pedestrian access ways shall not create traffic hazards and shall be: adequate, but not excessive in number; adequate in width, grade alignment, and visibility/adequate in distance from street corners, places of public assembly and other access ways; and adequate in design for other similar safety considerations."
Pursuant to Regulations, Section 4.5 C. 4, submission of a traffic impact analysis may be required of an applicant.
 VI
A review of the record reveals that a paramount concern in the course of the proceedings was the impact of the plaintiffs proposal on traffic safety and density of use. The plaintiff Mobil submitted a traffic impact analysis (Return of Record, Exhibit 4), and in response to concerns raised by the Town's Traffic Maintenance Officer, Richard A. Doll, (ROR, Exhibit 11e), filed additional materials related to traffic impact (ROR Exhibits 11h, 11i, 11k, 11n) and its experts testified at the public hearing on the application.
The record reflects that the subject property is located on the southeast corner of the intersection of Main Street (Route 150) and Church Street (Route 68) in the Yalesville section of Wallingford. The site currently, and as proposed, is accessed by two driveways on Main Street and one driveway on Church Street. Officer Doll wrote that this intersection "is one of our most heavily congested intersections during peak hours and shows heavy accident experience" (ROR, Exhibit 11e). The plaintiffs expert submitted a table indicating that the number of accidents at said intersection totaled eight in 1994, ten in 1995, seventeen in 1996 and seven in 1997. This table was based on information supplied the applicant by the Connecticut Department of Transportation. At the public hearing held August 24, 1998, Officer Doll stated that "This is one of our heaviest accident intersections in Town. In that three-year period there was roughly 80 accidents out there — a lot of rear-end accidents." (ROR, Exhibit 12, p. 6; and see Doll comments on p. 9). Doll's statement was not challenged.
The plaintiff's traffic impact analysis found that existing CT Page 16160 traffic volumes in and out of the subject property during the morning peak hour (7:15 A.M.-8:15 P.M.) totaled 45 vehicle entries and 47 exits (ROR Exhibit 4, Figure 2) with proposed traffic volumes in the same time period and out of the site were calculated at 61 entries and 60 exits during the evening peak hour (4:00 P.M.-5 P.M.) (ROR, Exhibit 4, Figure 3), with proposed traffic volumes calculated at 93 entries and 93 exits (ROR, Exhibit 4, Figure 7).
A "level of service" analysis was also performed, Such analysis provides a comparison of peak traffic volumes with available roadway capacity, producing a measurement of average total delay. As subsequently revised, Daniel D. Disario, the plaintiffs traffic expert, concluded that the overall intersection Level of Service is "F" during the morning and evening peak hours, with or without the proposed renovation.(ROR, Exhibit 11h, p. 1). On a scale of A to F, "F" is the lowest delay . . ." (ROR, Exhibit 4, Technical Appendix, Table II). The plaintiffs analysis for the three access driveways to the subject property showed less problematic levels of service (ranging from "a" to "c" on the industry scale of "a' through "f") with, as stated, no deterioration in level of service predicted as a result of the plaintiffs proposed renovation. (See ROR, Exhibit 4, Figures 4, 5, 8, 9).
The renovation included a reduction in width of the Church Street access entrance from 40 feet to thirty feet, still within permitted dimensions.
The plaintiff's expert did an analysis of existing queues at the intersection which indicated that "the site driveways are blocked during a red traffic signal to the northbound Main Street and westbound Church Street approaches. However field observations made during the traffic counts revealed that the queues along these two approaches dissipated when the traffic signal turned green. Additionally, examination of the peak hour traffic volumes contained in the traffic study shows that the primary traffic flow through the site consists of right turns into and out of the site, which are not substantially affected by the queues along the adjacent roadways." (ROR, Exhibit 11h, p. 2).
The plaintiff's expert projected "about a 20% increase in the existing site activity" (ROR, Exhibit 12, p. 4)
The plaintiff's expert concluded, inter alia, that "the CT Page 16161 proposed improvements . . . will have minimal (if any) impact on traffic conditions"; that ". . . . overall traffic attracted to the area will not perceptibly change over existing conditions . . ." (ROR, Exhibit 4, p. 12); that the site experienced one turning incident along its Main Street driveways per year; that, "Essentially the accident experience at the Mobil Station is not significant; and we do not anticipate any significant changes as a result of the proposed food mart". (ROR, Exhibit 12, p. 6).; that the traffic study conservatively projects "an increase of only one additional vehicle attracted to the site every three to four minutes during peak hours. Such a site traffic volume increase has an immeasurable impact on the adjacent roadway network . . ." (ROR, Exhibit 11h, p. 1).
The commission and its members were entitled to rely on their own knowledge of the site and the traffic conditions in the area in considering the impact of the proposal on traffic safety and use and density at the site. The commission members could rely on the expert testimony of Traffic Maintenance Officer Doll. (The plaintiff, in its brief, claimed Doll stated that the proposed changes "would nor unduly aggravate the off-site traffic conditions". On reviewing the transcript of the public hearing, the court is unable to discover testimony by Doll that could fairly be construed as so stating.[1]) Commission members could give the weight they considered appropriate to the testimony of Rys and Parisi, who spoke against the proposal. The commission members could rely on evidence submitted by the plaintiff's expert, but were not required to adopt the conclusions that expert reached. The court concludes that there was substantial evidence in the record to support the commission's denial of the plaintiffs application because of demonstrated traffic problems associated with the location, exacerbated by the potential increased use and density at the site, were the proposal to be implemented. There was evidence in the record that this intersection was congested at peak hours, that it was one of the heaviest accident intersections in town, that the proposed alterations would increase the volume of traffic entering and exiting the site at peak hours. The issues were not so technical and complex as to require expert testimony rebutting the plaintiffs expert's conclusions that the proposal would have minimum, if any impact, on traffic conditions at the intersection.
The commission could reasonably conclude that Mobil's application, with its projected increase in traffic assessing its CT Page 16162 site, at a congested intersection failed to meet the applicable standards including regulations, Section 7.5 B.1.2, Section 7.5 B.1.6, and Section 7.2.C. The plaintiff alleges that the credible evidence in the record supports the granting of the application. Credibility of evidence is to be determined by the commission and its members. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence, Samperi v. InlandWetlands Agency, 226 Conn. 579, 588. The court finds there is credible evidence in the record sufficient to support the defendant's decision to deny the subject application.
 VII
The plaintiff alleges that the testimony at the public hearing of Robert Parisi, was unduly influential and prejudicial to Mobil and that the commission's actions, once Parisi had voiced his opposition to the subject application, demonstrated bias. It is undisputed that at the time of said hearing Parisi was a member of the Town Council of Wallingford and that the said Council appointed members of the defendant commission. When the commission chairman called for public comment, two men, Rys and Parisi, spoke in opposition to the application. The plaintiff complains that Parisi failed to identify himself as a member of the town council, but points to no requirement in statute or regulation that Parisi do so. In the absence of a statement to the contrary, it is reasonable to conclude Parisi was speaking in his private capacity. There is nothing in the record to suggest he purported to speak for the council.
Further, the plaintiff points to no statute or regulation barring a member of the town council from stating an opinion on the merits of an application pending before the planning and zoning commission at a public hearing on said application. The cases cited by the plaintiff, Daly v. Town Plan ZoningCommission, 150 Conn. 495, and Mills v. Town Planning and ZoningCommission, 144 Conn. 493, have to do with the application of what is now General Statutes, Section 8-11, to the facts of the respective cases. Section 8-11 concerns disqualification of members of zoning authorities from representing or appearing for any "person . . . or entity"before such zoning authorities, and disqualification of a member from participating in a hearing or decision of the agency of which he is a member upon "any matter in which he is directly or indirectly interested in a personal or financial sense". Parisi is not a member of such zoning CT Page 16163 authority, he did not "appear for or represent any person, firm, corporation or other entity" and there is no claim here that Parisi had a personal or financial interest in the outcome of the proceeding.
Lastly, there is no evidence in the record to support the claim that Parisi's comments were "unduly influential and prejudicial" to the defendant. Presumably, one who speaks at a public hearing on such application hopes to influence the outcome. The plaintiff has not suggested to the court a standard to be used in determining when influence becomes undue. A review of Parisi's statements reveals nothing that can be construed as threatening to commission members. While the plaintiff claims that following Parisi's statement the demeanor of the commission changed and it quickly closed the public hearing, a review of the record shows Parisi spoke twice; that after his initial statement in opposition to the proposal, the public hearing continued, with commission members asking questions and commenting, Officer Doll and the plaintiffs attorney responding. When the Chairman sought a motion to close the public hearing, the plaintiffs attorney sought, and was given, the opportunity to respond to Rys and Parisi's concerns (Exhibit 12, p. 10). Parisi in turn responded, reiterating his opposition, and the public hearing was closed. The record demonstrates that the plaintiff was given the opportunity to be heard and to respond to criticisms of its proposal. The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence that Parisi's comments unduly influenced the commission or prejudiced the commission, or that the commission acted with bias toward the plaintiff. "[T]he plaintiff in this case must demonstrate actual bias, rather than mere potential bias," Rado v. Board ofEducation, 216 Conn. 541, 556, and this the plaintiff has failed to do.
In its Brief, the plaintiff claims the commission's decision was illegal, arbitrary and capricious and an abuse of discretion because the proposal, if approved would eliminate an existing legal nonconforming use (auto repair garage) with a permitted retail use (retail/convenience sales). The court is not persuaded. Assuming, arguendo, that an application for special permit includes a change which serves to reduce or eliminate a nonconforming use, this would not permit a zoning authority to overlook failure of the application to meet standards relating to traffic safety and intensity of use set forth in the regulations. CT Page 16164
 VIII
The plaintiff, Mobil Oil Corporation, has failed to establish, by a fair preponderance of the evidence, that the defendant Commission, in denying Mobil's application for special permit and site plan approval, acted illegally, arbitrarily or capriciously.
Accordingly, the relief requested is denied and the plaintiffs appeal is dismissed.
Judgment may enter in favor of the defendant, the Planning and Zoning Commission of the Town of Wallingford.
By the Court,
Downey, J.